[Nos. B068700, B071388. Second Dist., Div. Three. July 28, 1994.]

JAMES C. HOLLAND et al., Plaintiffs and Appellants, v.
JANET BACON CRUMB et al., Defendants and Respondents;
STATE COMPENSATION INSURANCE FUND, Intervener and
Appellant.

**COUNSEL**

Mazursky, Schwartz & Angelo, Christopher E. Angelo, Wallace, Brennan & Folan and Donald B. Wallace for Plaintiffs and Appellants.

Krimen, Bjornsen & Klein and Joanne Marie Walker for Intervener and Appellant.

Hamrick, Garrotto, Briskin & Pene, Robert S. Hamrick, Roman Y. Nykolyshyn, Sylvester, Oppenheim & Freedman, Richard J. Schlegel, Gibson & Rivera and Clark Rivera for Defendants and Respondents.

## OPINION

**CROSKEY, Acting P. J.**—In this matter, we conclude that the "firefighter's rule" bars the claim of a privately employed tow truck driver who was injured during the normal discharge of his duties at the scene of a freeway automobile accident.

Plaintiffs James Holland (Holland) and Kathleen Holland, husband and wife (collectively, the Hollands), and plaintiff-in-intervention State Compensation Insurance Fund (the compensation carrier)[1] appeal from a summary judgment entered in favor of several defendants.[2] The defendants are (1) Janet Bacon Crumb (Crumb), (2) Leon Schwartz (Schwartz), (3) the estate of Richard Tufenkian and Madeleine Tufenkian as administrator of the estate of Richard Tufenkian (collectively Tufenkian), and (4) Western Waste Industries and Waste Equipment Leasing (collectively the waste companies). The judgment was entered after the trial court determined the defendants bore no responsibility for the traffic accident in which Holland was injured and granted separate summary judgment motions by the defendants.

Holland, a tow truck driver, was injured when he went to the scene of an accident in which Crumb, Schwartz, and Tufenkian were involved. He later sued the defendants for his injuries. In this case we review the so-called "firefighter's rule" and conclude that it bars Holland's claim against each of the defendants. We also reject Holland's argument that he is entitled to recover under the "rescue" doctrine. We therefore affirm the judgment.

---

[1]Collectively, the Hollands and the compensation carrier will be referred to simply as the Hollands.

[2]In fact, there are two separate appeals (Nos. B068700 and B071388) which we have, on our own motion, ordered consolidated. The Hollands first appealed from orders which granted the motions of Schwartz and Crumb for summary judgment. As we and so many other courts have said on so many occasions, such orders are *not* appealable. (*Wolfrich Corp.* v. *United Services Automobile Assn.* (1983) 149 Cal.App.3d 1206, 1208-1209, fn. 2 [197 Cal.Rptr. 446], disapproved on another point in *Doctors' Co.* v. *Superior Court* (1989) 49 Cal.3d 39, 42 [260 Cal.Rptr. 183, 775 P.2d 508].) However, in the interest of judicial economy, we will construe the first appeal as being from the subsequently entered summary judgment. (*Ibid.*) It is from that judgment that the Hollands filed their second appeal.

BACKGROUND OF THE CASE

1. *The Parties*

This case arose from two traffic accidents. The first accident involved defendants Crumb, Schwartz, and decedent Richard Tufenkian. The second involved plaintiff Holland, Tufenkian, and a vehicle driven by one Kenneth John Deitch. Deitch is not a party in this action.

Richard Tufenkian was connected with the waste companies by his employment; the waste companies were sued under the theory of respondeat superior. The compensation carrier intervened in this action as the workers' compensation carrier of Holland's employer, alleging that Holland's injuries were sustained in the course and scope of his employment. Kathleen Holland sued for loss of consortium.

2. *The Accidents*

About 10:30 a.m. on February 17, 1990, Schwartz, Crumb and Tufenkian were traveling east on Interstate 210 in rainy weather. The vehicle driven by Schwartz was hit from behind by the vehicle driven by Crumb. Right after that, Crumb's vehicle was struck from behind by Tufenkian. Thereafter, Crumb's vehicle stalled and she coasted onto the center divider of the freeway and stopped. Schwartz and Tufenkian drove their vehicles onto the right shoulder of the freeway; Schwartz stopped directly below an overpass and Tufenkian stopped about two car lengths in back of Schwartz.

Tufenkian summoned the highway patrol on his cellular phone. Schwartz departed the scene after waiting approximately 40 minutes for the highway patrol to arrive. About an hour after the accident, Holland arrived on the scene. He was employed by a tow truck company and had been sent to the scene by his employer, his employer having been contacted by the highway patrol. (Holland's employer also sent a second tow truck to deal with Crumb's car.) Holland parked his tow truck in front of Tufenkian's car and began hooking up the car to his truck, intending to tow it away.

By this time, Tufenkian's wife had arrived at the scene and parked behind Tufenkian's car. Holland suggested to Tufenkian that he would be safer if he got into his wife's car while Holland hooked up his car to the tow truck. Tufenkian took the advice.

What happened next is a matter of some dispute. According to appellants, Holland completed the hookup and was in his truck getting ready to leave

when he saw Tufenkian walking towards him on the driver's side (i.e., the freeway side) of the tow truck. Holland got out of the truck to tell Tufenkian to walk on the other side of the vehicles. According to Holland, he was afraid for Tufenkian's safety because the visibility of eastbound cars on the freeway was diminished. This diminished visibility was due to the fact that it was raining and the tow truck and the Tufenkians were parked under the overpass and were located just past the crest of a hill and a dip in the freeway. Holland walked towards Tufenkian, motioning and yelling to him to move to the other side of the vehicles. Eventually Tufenkian understood Holland's directions and turned back to walk around his car; Holland turned to walk back to his truck. At that point, Deitch's car struck them, killing Tufenkian and injuring Holland.

Crumb had a different version of what happened. According to her, Holland and the tow truck driver who was assisting her had been having a conversation across the freeway by shouting to each other. Their conversation lasted two to three minutes. This took place while Tufenkian and Holland were standing by the side of Holland's tow truck. Almost immediately after the two truck drivers had finished their conversation, Deitch struck.

In ruling on the respective motions for summary judgment, the trial court construed the evidence on this factual dispute in the light most favorable to the Hollands. Nonetheless, the court found in favor of the defendants, basing its decisions on causation issues.

Before us on appeal are several issues of tort liability; they include causation, the firefighter's rule and the rescue rule. We address only the latter two, as they are dispositive of both appeals.

DISCUSSION

1. *Standard of Review*

We conduct a de novo review of this matter. (*Price* v. *Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 474 [261 Cal.Rptr. 735].) Under Code of Civil Procedure section 437c, subdivision (c), summary judgment is properly granted only "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

2. *The Firefighter's Rule*

■ The firefighter's rule addresses those instances where a plaintiff's occupation positions him in a situation which was brought about by the

negligent acts of another and in which the plaintiff becomes injured. The rule prevents the injured plaintiff from recovering against the other party if the injury resulted from a risk of harm which is natural to the plaintiff's occupation.

In *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 370 [182 Cal.Rptr. 629, 644 P.2d 822], the court stated that the firefighter's rule is primarily based on the principle of law known as assumption of risk. However, "a [firefighter] does not assume every possible risk he [or she] may encounter while engaged in his [or her] occupation. [Citations.] A [firefighter] assumes only those hazards which are known or can reasonably be anticipated at the site of the fire. [Citations.]" (*Id.* at p. 371.)

The Supreme Court had occasion to discuss the firefighter's rule in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696], where the court took up the principles of primary assumption of risk (involving situations where the defendant had no duty of care to protect the plaintiff from a particular risk) and secondary assumption of risk (where the defendant had a duty of care, breached it, and the plaintiff knowingly encountered a risk of injury caused by that breach, this giving rise to the issue of comparative fault). In *Knight*, the court stated: "[T]he primary assumption of risk doctrine . . . comes into play in the category of cases often described as involving the 'firefighter's rule.' [Citation.] In its most classic form, the firefighter's rule involves the question whether a person who negligently has started a fire is liable for an injury sustained by a firefighter who is summoned to fight the fire; the rule provides that the person who started the fire is not liable under such circumstances. [Citation.] Although a number of theories have been cited to support this conclusion, the most persuasive explanation is that the party who negligently started the fire had no legal duty to protect the firefighter from the very danger that the firefighter is employed to confront. [Citations.] Because the defendant in such a case owes no duty to protect the firefighter from such risks, the firefighter has no cause of action . . . ." (*Id.* at pp. 309-310, fn. 5.)

In California, the firefighter's rule was first applied in *Giorgi* v. *Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355 [72 Cal.Rptr. 119]. Although the plaintiffs in *Giorgi* were injured firefighters or their decedents, the court indicated a willingness to apply the rule to other occupations, saying: "What of obvious expansions of . . . a rule of liability if adopted? Would an ambulance driver, responding to a call to pick up victims of an automobile collision caused by negligence, be allowed recovery from the negligent driver in that first collision for injuries sustained by the speeding ambulance driver in an accident en route to the scene? What of an attendant or nurse in

the contagious disease ward of a public hospital? Would he be permitted recovery for an illness contracted from a patient confined in that ward because of disease contracted through the patient's negligent exposure of himself to the infection which caused his own confinement?" (*Id.* at p. 360.)

The firefighter's rule has been applied to prevent recovery by plaintiff peace officers who sustained injuries in the line of duty. (See, e.g., *Walters* v. *Sloan* (1977) 20 Cal.3d 199 [142 Cal.Rptr. 152, 571 P.2d 609] and *Schrimscher* v. *Bryson* (1976) 58 Cal.App.3d 660 [130 Cal.Rptr. 125].) In *Solgaard* v. *Guy F. Atkinson Co.* (1971) 6 Cal.3d 361 [99 Cal.Rptr. 29, 491 P.2d 821], the defendant sought to have the court apply the firefighter's rule to an injured plaintiff medical doctor. The doctor had agreed to provide emergency medical care for the defendant contractor's employees at a construction site. The doctor was injured when he agreed to render aid to men pinned in a deep trench. Climbing down a steep embankment to get to the injured workers, he injured his back. The defendant argued that by reason of his prior agreement to provide medical aid to the employees, the doctor was merely acting within his duties when he went to the employees' assistance. The *Solgaard* court disagreed, saying the plaintiff had not agreed "to expose himself to risks and hazards not necessarily inherent in the performance of his services." Thus, the court did not reject extension of the firefighter's rule to medical doctors but only objected to its application there because the particular facts of the case demonstrated that the plaintiff doctor had been injured by conditions which presented a risk of harm not inherent to the normal performance of his assigned duties.

In *Nelson* v. *Hall* (1985) 165 Cal.App.3d 709 [211 Cal.Rptr. 668], the firefighter's rule was applied to preclude a plaintiff veterinary assistant from recovering against defendant dog owners whose dog had bitten the assistant during medical treatment. In *Davis* v. *Gaschler* (1992) 11 Cal.App.4th 1392 [14 Cal.Rptr.2d 679], the court was presented with defendants who sought to be relieved of liability for injuries caused when their dog bit the plaintiff. The plaintiff was experienced in breeding and handling dogs. However, at the time she was bitten by defendants' dog, plaintiff was helping third party Good Samaritans put the dog into their car, the dog having been run over by unknown persons. The court ruled that under the facts of that case, the firefighter's rule did not apply. The court stated: "As we understand *Knight* [v. *Jewett* (1992) 3 Cal.4th 296 (11 Cal.Rptr.2d 2, 834 P.2d 696)], under the firefighter's rule (or the veterinarian variant) the absence of duty is established by the nature of the activity and the relationship of the parties. Thus, the plaintiff is employed and compensated for work that carries with it certain hazards. Here, plaintiff was not employed or otherwise compensated

for helping injured dogs. Nor was there an employment relationship or any relationship between plaintiff and defendants." (*Id.* at p. 1401.)

█ Given these applications of the firefighter's rule to other occupations, and the rationales expressed by the various courts for applying or not applying the rule to the facts before them, we must reject the Hollands' contention that the rule cannot properly be applied to tow truck drivers. Being injured by passing vehicles on streets and highways, such as occurred in this case, is one of "those hazards which are known or can reasonably be anticipated" by a tow truck driver (*Lipson* v. *Superior Court, supra,* 31 Cal.3d at p. 371), even though Holland's work does not *always* put him in such dangerous circumstances.

The Hollands' attempt to factually distinguish Holland from police and firefighters is without merit. They contend that, unlike Holland, peace officers and firefighters are (1) public employees paid with public funds, (2) paid to save life and property, (3) paid to enforce the law, (4) experts with substantial training, and (5) given special safety equipment. This, they argue, makes application of the firefighter's rule to Holland inappropriate. We do not think so. The application of the firefighter's rule depends on the inherent dangers associated with one's employment, not with these extraneous matters.

Thus, assuming arguendo that the Hollands could otherwise meet their "causation" burdens in proving their negligence causes of action, which are based on the initial traffic accident where Crumb hit Schwartz and Tufenkian hit Crumb, the firefighter's rule precludes their recovery because the risk of being hit from passing traffic is inherent in the performance of the normal and usual duties of a tow truck driver rendering aid to inoperable cars which may be stranded on freeways or streets.

### 3. *The Rescue Doctrine*

█ The Hollands contend that the rescue doctrine applies here to permit recovery. █ That doctrine is applied where (1) a negligent *defendant* has placed a person (*the third party victim*) in danger and (2) the *plaintiff* has come to the rescue of the victim. The doctrine was developed to meet assertions made by negligent defendants that although they may have been negligent to their third party victims, they were not negligent to the plaintiff-rescuers. (*Solgaard* v. *Guy F. Atkinson Co., supra,* 6 Cal.3d at p. 368.) "The theory which underlies the rescue rule is, in essence, that 'rescuers, as a class, are always foreseeable when the defendant's negligence endangers anyone.' [Citation.] Thus, if defendant creates a situation of peril for one

person (the victim), defendant properly may be charged with having proximately caused not only that peril but also the rescue and any injury suffered during its course. [Citation.]" (*Ibid.*)

■ According to the Hollands, Holland engaged in two rescues when he came to the freeway scene. First, he rescued the disabled Tufenkian vehicle. Second, he "came to the rescue when Tufenkian negligently exited from the car of his wife . . . and approached Holland's tow truck on the traffic side of the vehicles." The first "rescue" cannot come within the rescue doctrine because it clearly comes within the firefighter's rule. The first "rescue" was performed during the course of Holland's employment duty to deal with the disabled vehicle.

With respect to the second "rescue," while warning persons of dangerous conditions may not be a specific duty inherent in his job of assisting motorists with inoperable vehicles, it is very closely related thereto and is a natural part thereof. In addition, the rescue doctrine by its nature involves more than two persons; it necessarily requires a third party victim placed in peril by the defendant's negligence. Here, the only persons involved in the "second rescue" were Tufenkian and Holland.

The Hollands present no alternative theory to explain why the rescue doctrine should be extended to the facts of this case or why liability should otherwise be imposed on Tufenkian for Holland's having been hit when he exited his truck to "warn" Tufenkian. Suppose Holland had seen Tufenkian walking the sidewalks of a dangerous part of the city and had stopped his tow truck and warned Tufenkian that he ought not to be there, would Tufenkian be liable to Holland if, after stopping to deliver his warning, Holland was robbed or assaulted?

### DISPOSITION

The summary judgment appealed from is affirmed. Costs on appeal to respondents.

Kitching, J., and Parkin, J.,* concurred.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.