[No. B110144. Second Dist., Div. Four. June 30, 1997.]

HOLLIS O. DYER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MOUFEED O. HASOU, Real Party in Interest.

---

## COUNSEL

Fonda & Hilberman, Joe W. Hilberman and David L. Scott for Petitioner.

No appearance for Respondent.

Girardi & Keese, John A. Girardi and John Roberts for Real Party in Interest.

---

## OPINION

BARON, J.—Petitioner Hollis O. Dyer's motion for summary judgment was denied on real party in interest Moufeed O. Hasou's action for negligence against Dyer. Dyer seeks a writ directing the trial court to vacate the denial of summary judgment and to enter a new order granting the motion, as well as judgment in Dyer's favor. We grant the petition for writ of mandate.

### FACTS

The parties did not dispute the following facts: At approximately 10:10 p.m. on July 16, 1995, Dyer was driving his 1987 Ford Mustang on the westbound 134 Freeway when he experienced mechanical problems. He pulled his Mustang completely off the freeway and onto the right shoulder. Dyer, an American Automobile Association (AAA) member, called for a tow truck.

Hasou arrived and parked his tow truck completely off the freeway on the right shoulder, in front of Dyer's Mustang. After obtaining Dyer's AAA membership information, Hasou walked towards the tow truck. When Hasou was between the Mustang and the tow truck, a Ford Crown Victoria struck the Mustang, pinning Hasou between the Mustang and the tow truck. The Crown Victoria then veered across the freeway and crashed into the center divider. Its driver fled on foot.

Although Dyer was also injured in the accident, he was able to move the tow truck to relieve pressure on Hasou's legs. He then phoned 911.

RELEVANT PROCEDURE BACKGROUND

On February 27, 1996, Hasou filed a complaint for personal damages against Dyer, the registered owner of the Crown Victoria, the California State Department of Transportation, and several other parties. The complaint included a cause of action for negligence against Dyer, alleging that Dyer had a duty to maintain his car, and his failure to do so caused the mechanical breakdown that brought Hasou to the freeway location where Hasou suffered injury. On or about June 16, 1996, Golden Eagle Insurance Company, which insured Hasou's employer against liability for workers' compensation benefits, filed a complaint in intervention alleging the same claim for negligence against Dyer.

On or about December 5, 1996, Dyer filed a motion for summary judgment. Dyer contended that the doctrine of assumption of risk and the firefighter's rule barred Hasou's action against him, citing *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] and *Holland* v. *Crumb* (1994) 26 Cal.App.4th 1844 [32 Cal.Rptr.2d 366]. Hasou opposed the motion on the basis of a footnote in *Neighbarger* v. *Irwin Industries, Inc.* (1994) 8 Cal.4th 532 [34 Cal.Rptr.2d 630, 882 P.2d 347], in which our Supreme Court rejected the reasoning by which the *Holland* court applied the firefighter's rule to claims by private tow truck operators. (See *Neighbarger* v. *Irwin Industries, Inc.*, *supra*, at p. 545, fn. 4.) Golden Eagle Insurance Company joined in Hasou's opposition.

At the hearing on Dyer's motion, the trial court concluded that the *Neighbarger* footnote was dispositive, and it filed an order denying summary judgment on February 27, 1997. On March 7, 1997, Dyer filed his petition for writ of mandate, prohibition, or other appropriate relief. On April 11, 1997, we issued an alternative writ of mandate and temporary stay.

DISCUSSION

A. *Standard of Review*

We review the trial court's ruling on Dyer's motion for summary judgment de novo. (*Lunardi* v. *Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56].) "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

Because the essential facts are not in dispute, the key questions here are legal, and concern the doctrine of assumption of risk and the firefighter's

rule. ■ Assumption of risk doctrine bars a plaintiff's recovery for negligence when "it can be established that, because of the nature of the activity involved and the parties' relationship to the activity, the defendant owed the plaintiff no duty of care. [Citation.]" (*Neighbarger* v. *Irwin Industries, Inc.*, *supra*, 8 Cal.4th at p. 538; see *Knight* v. *Jewett*, *supra*, 3 Cal.4th at pp. 313, 314-315.)[1] The firefighter's rule is a specific application of this doctrine. (See *Knight* v. *Jewett*, *supra*, 3 Cal.4th at pp. 309-310, fn. 5; *Neighbarger* v. *Irwin Industries, Inc.*, *supra*, 8 Cal.4th at p. 538.) "Under the firefighter's rule, a member of the public who negligently starts a fire owes no duty of care to assure that the firefighter who is summoned to combat the fire is not injured thereby. [Citations.]" (*Ibid.*)

Dyer contends that (1) the trial court erred in concluding that the *Neighbarger* footnote is dispositive on his motion for summary judgment, and that (2) the primary assumption of risk doctrine precludes imposition of a duty on him towards Hasou.

### B. *Neighbarger Footnote*

The first issue is the extent to which the *Neighbarger* footnote controls our resolution of the substantive legal issues presented by Dyer's motion.

■ Even when stated in footnotes, our Supreme Court's decisions bind us, and its dicta command our serious respect. (See *Bunch* v. *Coachella Valley Water Dist.* (1989) 214 Cal.App.3d 203, 212 [262 Cal.Rptr. 513]; *People* v. *Jackson* (1979) 95 Cal.App.3d 397, 402 [157 Cal.Rptr. 154].) However, "language contained in a judicial opinion is ' "to be understood in the light of the facts and issue then before the court, and an opinion is not authority for a proposition not therein considered. [Citation.]" ' [Citations.]" (*People* v. *Banks* (1993) 6 Cal.4th 926, 945 [25 Cal.Rptr.2d 524, 863 P.2d 769].) When questions about an opinion's import arise, the opinion "should receive a reasonable interpretation [citation] and an interpretation which reflects the circumstances under which it was rendered [citation]" (*Young* v. *Metropolitan Life Ins. Co.* (1971) 20 Cal.App.3d 777, 782 [98 Cal.Rptr. 77]), and its statements should be considered in context (see *Pullman Co.* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 379, 388 [170 P.2d 10]).

In *Neighbarger*, a maintenance company provided its services at a refinery under contract with an oil company. (*Neighbarger* v. *Irwin Industries, Inc.*, *supra*, 8 Cal.4th at p. 535.) When the maintenance company's employees

---

[1]This doctrine is sometimes called "primary assumption of risk doctrine" to distinguish it from so-called "secondary assumption of risk doctrine," which is now merged into the principles governing comparative fault. (See *Knight* v. *Jewett*, *supra*, 3 Cal.4th at p. 315.)

caused a fire that injured safety supervisors employed by the oil company, the safety supervisors sued the maintenance company, which argued that the firefighter's rule barred their action. (*Id.* at pp. 535-536.)

The question thus presented, as framed by the court, was "whether a private safety employee who has occasional fire fighting duties may state a cause of action against a third party, not the employer, for injuries caused by the third party's negligence in starting a fire." (*Neighbarger* v. *Irwin Industries, Inc.*, *supra*, 8 Cal.4th at pp. 534-535.) The court concluded that neither the firefighter's rule nor the assumption of risk doctrine bars such claims. (*Id.* at p. 535.) In the course of reaching this conclusion, the court discussed applications of the assumption of risk doctrine, including the "veterinarian's rule," which exempts parties who contract with veterinarians to treat their dogs from liability arising from dog bites. (*Id.* at pp. 536-545.) The court rejected one rationale for this rule and suggested a second rationale consistent with the decision in *Knight*, but did not decide whether the veterinarian's rule remains viable following *Knight*.

At this point in its discussion, the court inserted the footnote at issue here. The footnote states in full: "We also reject the reasoning of the court in [*Holland*], applying the firefighter's rule to the claim of a privately employed tow truck driver on the theory that a tow truck driver must assume the foreseeable risks of such hazardous employment. It is certainly not the case, as the Court of Appeal suggested in *Holland*, that private employees assume all the foreseeable risks of their employment. . . . [*Knight*] requires a closer analysis, focusing not on the foreseeability of the hazard or the plaintiff's subjective awareness of risk, but on the defendant's duty of care and the relationship of the parties." (*Neighbarger* v. *Irwin Industries, Inc.*, *supra*, 8 Cal.4th at p. 545, fn. 4.)

It is evident that this footnote, viewed in context, does not overrule the holding in *Holland*. The footnote occurs in a discussion of rationales for rules whose viability the court does not decide. Moreover, the holding in a case is not "the mere reasoning of the court," but "[t]he point decided by the Court, and which the reasoning illustrates and explains . . . ." (*Hart* v. *Burnett* (1860) 15 Cal. 530, 598; see also *In re John B.* (1989) 215 Cal.App.3d 477, 481 [263 Cal.Rptr. 607].) Thus, the court's rejection of the reasoning in *Holland*, construed in context, is not a rejection of its holding.

Nor is the footnote a persuasive dictum that *Holland* was wrongly decided. Generally, a dictum of the Supreme Court " 'while not controlling authority, carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic. [Citations.]' "

(*Grange Debris Box & Wrecking Co.* v. *Superior Court* (1993) 16 Cal.App.4th 1349, 1358 [20 Cal.Rptr.2d 515].) Here, the court did not subject the holding in *Holland* to the "closer analysis" required by *Knight,* and the issue decided by the *Neighbarger* court involved facts materially different from those of the present case. In concluding that the assumption of risk doctrine did not bar the safety supervisors' negligence action, the *Neighbarger* court placed special significance on the absence of a contractual relationship between these parties. (*Neighbarger* v. *Irwin Industries, Inc., supra,* 8 Cal.4th at pp. 542-543.) As we explain below (see pt. C., *post*), Dyer's contractual relationship with Hasou supports the contrary conclusion about the application of the assumption of risk doctrine in the present case.

Although the *Neighbarger* footnote leaves the holding in *Holland* intact, we decline to treat *Holland* as persuasive precedent. The footnote's clear import is that the question decided in *Holland* should be analyzed afresh under the principles stated in *Knight.* We turn to this task.

### C. *Assumption of Risk and the Firefighter's Rule*

 Under *Knight,* the key question concerning the application of assumption of risk doctrine is not whether the plaintiff was reasonable or unreasonable in undertaking an activity, but whether "by virtue of the nature of the activity and the parties' relationship to the activity, the defendant owes no legal duty to protect the plaintiff from the particular risk of harm that caused the injury . . . ." (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 314-315; see also *id.* at p. 309; *Neighbarger* v. *Irwin Industries, Inc., supra,* 8 Cal.4th at p. 538.)

 "As a general rule, each person has a duty to use ordinary care and 'is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . .' [Citations.]" (*Parsons* v. *Crown Disposal Co.* (1997) 15 Cal.4th 456, 472 [63 Cal.Rptr.2d 291, 936 P.2d 70]; see Civ. Code, § 1714, subd. (a).) In the context of motor vehicle use, "[a]n owner or operator of a motor vehicle has . . . a . . . duty to use reasonable and ordinary care, by properly maintaining the motor vehicle, to prevent an increase in the chances of inflicting injury on others by use of the vehicle. [Citations.] Likewise, an owner or motorist can be held negligent for failure to exercise the care an ordinary, prudent person would have exercised to maintain one's motor vehicle in reasonably safe condition. [Citation.] [¶] Additionally, this duty of care encompasses the duty to reasonably inspect the motor vehicle for defects. [Citation.]" (*Yamaha Motor Corp.* v. *Paseman* (1990) 219 Cal.App.3d 958, 965 [268 Cal.Rptr. 514].)

 The facts of this case raise a narrow question about this duty of care. Did Dyer owe a duty to Hasou to keep his car in good mechanical order

so that Dyer would not need Hasou's assistance on the freeway, given that Hasou had a contract-based obligation through Dyer's AAA membership to help Dyer in case of mechanical breakdown? Hasou does not contend that Dyer's actions on the freeway shoulder caused Hasou's injuries. Although there is a factual dispute concerning where Hasou and Dyer spoke prior to the accident, it is undisputed that when the Crown Victoria struck Dyer's car, Hasou was between Dyer's car and the tow truck, both of which were completely off the freeway.[2] Hasou's sole contention is that Dyer breached his duty to maintain his car and thereby prevent the call for assistance that brought Hasou to the freeway shoulder.

In *Parsons* v. *Crown Disposal Co., supra,* 15 Cal.4th 456, our Supreme Court summarized the principles governing an inquiry into the existence of a duty of care in a particular context. "Whether a given case falls within an exception to [the] general rule [concerning the duty of care], or whether a duty of care exists in a given circumstance, 'is a question of law to be determined on a case-by-case basis.' [Citation.] [¶] ' "[D]uty" is not an immutable fact of nature " 'but only an expression of the sum total of those *considerations of policy* which lead the law to say that the particular plaintiff is entitled to protection.' " [Citations.]' " (*Id.* at p. 472, original italics.)

These policy considerations include those originally enumerated in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], namely, " 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. [Citations.]' " (*Parsons* v. *Crown Disposal Co., supra,* 15 Cal.4th at p. 473, quoting *Rowland* v. *Christian, supra,* 69 Cal.2d at p. 113.)

The firefighter's rule embodies a specific limitation of the basic duty of care resting on a particular set of important policy considerations. In *Neighbarger,* the court stated that the firefighter's rule is intended "to eliminate the duty of care to a limited class of workers, the need for whose employment arises from certain inevitable risks that threaten the public

---

[2]In this respect, the facts in the present case differ from those in *Holland.* In *Holland,* there was evidence that the stranded motorists were on or very near a freeway traffic lane, and that a passing vehicle hit the tow truck operator because he had approached the motorists to move them to a safer location. (*Holland* v. *Crumb, supra,* 26 Cal.App.4th at pp. 1848-1849.) We do not address whether the assumption of risk doctrine precludes liability when the motorist's conduct at the site of the vehicle breakdown enhances the hazards to the tow truck operator.

welfare." (*Neighbarger* v. *Irwin Industries, Inc., supra,* 8 Cal.4th at p. 542.) The court identified three policy considerations warranting this elimination of duty. First, "it is unfair to charge the defendant with a duty of care to prevent injury to the plaintiff arising from the very condition or hazard the defendant has contracted with the plaintiff to remedy or confront." (*Ibid.*) Second, "public safety employees receive special public compensation for confronting the dangers posed by the defendants' negligence. [Citation.]" (*Id.* at p. 540.) Third, abolition of the firefighter's rule "would embroil the courts in relatively pointless litigation over rights of indemnification among the employer, the retirement system, and the defendants' insurer. [Citation.]" (*Ibid.*)

Because the firefighter's rule is only a specific application of the assumption of risk doctrine, our inquiry is not limited to the policy considerations underlying this rule. ▮▮▮▮ The fundamental issue before us is whether *any* set of policy considerations justifies eliminating a motorist's duty to keep his or her vehicle in good repair with respect to a limited set of workers, namely, those who have a contract-based obligation to the motorist to render assistance in case of mechanical breakdown.

We find guidance on this issue in two post-*Neighbarger* cases, *Herrle* v. *Estate of Marshall* (1996) 45 Cal.App.4th 1761 [53 Cal.Rptr.2d 713] and *Bryant* v. *Glastetter* (1995) 32 Cal.App.4th 770 [38 Cal.Rptr.2d 291]. In *Herrle*, an elderly woman rendered combative by senile dementia and Alzheimer's disease injured a certified nurse's aide working in a convalescent hospital. (*Herrle* v. *Estate of Marshall, supra,* at p. 1764.) The court in *Herrle* concluded that the assumption of risk doctrine barred the aide's negligence action against the elderly woman, reasoning thus: "Plaintiff was engaged as an aide in a convalescent hospital to assume responsibility to care for mentally incompetent patients, many of whom are occasionally violent. [The elderly woman] was placed specifically in the hospital's care in part to protect her from injuring herself and others because of her violent tendencies. In the words of *Knight,* 'the nature of the activity' was the protection of the patient from doing harm to herself or others; 'the parties' relationship to the activity' was plaintiff's professional responsibility to provide this protection[; and] the 'particular risk of harm that caused the injury' was the very risk plaintiff and her employer were hired to prevent." (*Id.* at p. 1765.) Citing *Neighbarger,* the *Herrle* court observed the essential unfairness of imposing upon the elderly woman a duty of care that she, through her relatives, had contracted with the plaintiff and her employer to supply. (*Id.* at p. 1772.)

Although Hasou was injured by a hazard arising from the location of Dyer's car, rather than by Dyer's car itself, we believe that the reasoning in

*Herrle* governs the present case. To paraphrase *Herrle*, " 'the nature of the activity' " was taking responsibility for Dyer's car in the case of breakdown, even at hazardous locations such as freeway shoulders, " 'the parties' relationship to the activity' " was Hasou's contractual obligation to provide this service, and the " 'particular risk of harm that caused the injury' " was the very risk inherent in working on Dyer's car on a freeway shoulder.

The conclusion that the assumption of risk doctrine precludes imposing liability on Dyer receives additional support from *Bryant*. In *Bryant*, police officers stopped a drunk driver on a freeway, arrested the driver, and called a tow truck to haul away the driver's car. (*Bryant* v. *Glastetter*, *supra*, 32 Cal.App.4th at p. 774.) While working to remove the car from the narrow freeway shoulder, the tow truck driver was struck and killed by another car. (*Ibid.*) The decedent's family then sued the drunk driver for negligence. (*Id.* at pp. 775-777.)

Applying the multifactored *Rowland* test, the *Bryant* court concluded that despite the fact that the driver had a duty not to drive while drunk, she owed the decedent no duty to avoid situations in which she might need his towing services.[3] (*Bryant* v. *Glastetter*, *supra*, 32 Cal.App.4th at pp. 782-783.) The court reasoned that the decedent's death was not a foreseeable result of the drunk driving, the connection between the death and the drunk driving was remote, and that imposing a duty would not promote society's interests. (*Id.* at pp. 778-783.)

With respect to foreseeability, the *Bryant* court noted that although the driver's drinking made it more probable that the decedent would be at the freeway roadside, the drinking itself did not make more probable the accident that occurred, "which was the result of independent negligence by a third party." (*Bryant* v. *Glastetter*, *supra*, 32 Cal.App.4th at p. 780.) Accordingly, the court concluded that the drinking made it foreseeable that the driver would be stopped by the side of the road, but not that the tow truck driver would be killed. (*Id.* at p. 780.)

With respect to the remoteness of the connection between the negligent conduct and the injury, the *Bryant* court reasoned that there was no logical cause-and-effect relationship between the driver's drinking and the injury other than that the drinking brought the decedent to the location where he was killed by a negligent third party. (*Bryant* v. *Glastetter*, *supra*, 32

[3]Although the tow truck driver in *Bryant* had a contractual obligation to the drunk driver to remove her car from the freeway (*Bryant* v. *Glastetter*, *supra*, 32 Cal.App.4th at p. 784), the court did not directly analyze the case in terms of assumption of risk doctrine (*id.* at pp. 783-784). However, the court noted that it had reached the same result as the court in *Holland*, albeit by another route. (32 Cal.App.4th at p. 784.)

Cal.App.4th at pp. 781-782.) In this regard, the court noted that the police, and not the drunk driver, had summoned the decedent to the freeway roadside. (*Id.* at p. 782.)

Finally, with respect to society's interests, the *Byrant* court stated: "If we decide here that Glastetter's initial negligence expands her liability beyond its usual scope to include harm resulting from the fact that Glastetter needed decedent's services, we will be establishing a rule which requires that a court examine the culpability of a defendant in needing the help of a tow truck in order to determine whether there is liability for subsequent harm to the driver. Thus, for example, if Glastetter had suffered a mechanical breakdown or had run out of gas we would have to look at whether and to what extent she had been negligent in creating the initial problem before we could evaluate the extent of her liability. [¶] As a matter of policy we do not think it is wise to create an incentive for drivers whose cars are disabled to attempt self-help solutions rather than to call for assistance. Even if those drivers were negligent in having created the initial problem, they should be encouraged to seek help in resolving it in the interest of the safety of all drivers." (*Bryant* v. *Glastetter, supra,* 32 Cal.App.4th at p. 782.)

The *Rowland* test produces a similar result in the present case. As in *Bryant*, Hasou's injuries were not a foreseeable result of Dyer's negligence (if any) in maintaining his car because this negligence only brought Hasou to the freeway shoulder, but did not make it more probable that a negligent third party would harm him at that location. Finally, the *Bryant* court's analysis of the social interests if a duty of care were imposed is compelling on that *Rowland* factor. In our view, it is good social policy to encourage motorists like Dyer to rely on their contractual arrangements for aid from private towing services, rather than to discourage them by imposing upon them potential liability for asking for help.

We conclude, on the facts of this case, that Dyer owed no duty to Hasou to maintain his car in running order, and hence that the assumption of risk doctrine bars Hasou's claim for negligence against Dyer. However, Hasou contends this doctrine is inapplicable to him because he is not a public safety employee, and thus he does not receive the "special public compensation for confronting the dangers posed by the defendants' negligence" that the *Neighbarger* court identified as one of the policy bases for the firefighter's rule. (See *Neighbarger* v. *Irwin Industries, Inc., supra,* 8 Cal.4th at p. 540.)

*Neighbarger* does not support Hasou's contention. Although the court also discussed in dicta applications of the assumption of risk doctrine to private workers, the court did not decide the viability of these applications (see pt.

B., *ante*), and *Herrle* demonstrates that the doctrine applies to some private workers. Moreover, the *Neighbarger* court acknowledged that the firefighter's rule has been applied to some safety workers despite the absence of "special public compensation," and stated that in such cases, the crucial question was the relationship between the public and the safety workers. (*Neighbarger* v. *Irwin Industries, Inc., supra,* 8 Cal.4th at p. 544.) As we have explained, Dyer's relationship to Hasou, together with compelling policy considerations, warrant the conclusion that Dyer owed no pertinent duty to Hasou.

In sum, the trial court erred in denying Dyer's motion for summary judgment.

## DISPOSITION

Let a peremptory writ of mandate issue directing that respondent trial court vacate its order denying Dyer's motion for summary judgment, and enter a new order granting summary judgment, as well as judgment in Dyer's favor. The alternative writ, having served its purpose, is discharged, and the temporary stay is vacated effective upon the issuance of remittitur. Costs to petitioner.

Vogel (C. S.), P. J., and Epstein, J., concurred.