128 Cal.Rptr.2d 573 (2002)
104 Cal.App.4th 858
Carleen OLMSTEAD et al., Plaintiffs and Respondents,
v.
ARTHUR J. GALLAGHER & COMPANY et al., Defendant and Appellants.
No. A097117.
Court of Appeal, First District, Division Three.
December 20, 2002.
Review Granted April 16, 2003.
*574 Tarkington, O'Connor & O'Neil, Thomas C. Burch, Robert A. Roth, Pacific Palisades, for Appellant.
Appell & Wolf, Mervyn H. Wolf, Encino; Marc J. Appell, Los Angeles, for Respondent.
PARRILLI, J.
This case presents the question whether Code of Civil Procedure section 128.5 applies, after 1994, to bad-faith actions or tactics that do not involve pleadings, while Code of Civil Procedure section 128.7 governs pleading abuses.[1] We. hold that the language of section 128.5 and the example of federal sanctions law, on which the Legislature modelled section 128.7, make it clear that the two statutes apply concurrently to different kinds of misconduct.[2]
This case also presents the question whether a directly false response to discovery may qualify as a "misuse of the discovery process" subject to sanctions under section 2023, subdivision (a). We hold that section 2023 does encompass such conduct.
Our conclusions require us to reverse the trial court's denial of motions seeking sanctions under sections 128.5 and 2023.

BACKGROUND
Arthur J. Gallagher & Company, an insurance broker, and its employee Vicki Sundgren (collectively, "Gallagher") appeal from post-trial orders denying their motions for an award of attorney fees. Gallagher claimed that plaintiffs Carleen Olmstead and Cherie Rose engaged in a variety of sanctionable misconduct in their unsuccessful action to recover underinsured motorist benefits. On appeal, Gallagher confines its arguments to three grounds for sanctions.
In its first motion, Gallagher relied on sections 128.5 and 128.7 in an effort to *575 recover $100,000 of the approximately $330,000 it had incurred in attorney fees. Gallagher complained that plaintiffs had lied about the existence of a fax purportedly requesting personal automobile insurance coverage for Olmstead. Gallagher also claimed that plaintiffs had failed to produce any documents in response to its request for information on other insurance plaintiffs obtained after the accident, but then attempted to introduce evidence of such insurance at a late stage of the trial. In its reply memorandum, Gallagher raised another point. In an interrogatory answer, Olmstead had denied making any other claim for compensation for her injuries. At trial, Rose and plaintiffs' counsel had said the only other claim was one against the owner and driver of the car in which Olmstead was a passenger when she was injured. However, just before filing its reply memorandum Gallagher discovered that plaintiffs had a pending action against the Department of Transportation (Caltrans), in which they alleged that roadway design defect had caused the accident. The same attorneys representing plaintiffs in this case had filed the CalTrans action the month before Gallagher propounded its interrogatories.
The trial court denied this motion. It ruled that plaintiffs and their counsel "may well have" engaged in conduct sanctionable under section 128.5, but the statute did not apply because the action was filed after December 31, 1994. The court rejected Gallagher's argument that section 128.5 applied to "reprehensible conduct" outside of pleadings, while section 128.7 applied to "pleading conduct." The court also ruled (that Gallagher could not recover sanctions under section 128.7 because it had failed to comply with that statute's 30-day safe harbor provision. (§ 128.7, subd. (c).)
Gallagher moved for reconsideration, arguing that while it had belatedly discovered and raised the concealment of the CalTrans lawsuit in its first motion, it had not had an opportunity to brief the issue of discovery sanctions under section 2023. The court granted reconsideration but denied Gallagher's request for sanctions, ruling that a false but unequivocal denial did not qualify as an "evasive response" under section 2023, subdivision (a)(6).

DISCUSSION

1. Sections 128.5 and 128.7

The Legislature enacted section 128.5 in 1981 as a response to Bauguess v. Paine (1978) 22 Cal.3d 626, 150 Cal.Rptr. 461, 586 P.2d 942, in which the Supreme Court held that trial courts lack the power to impose sanctions in the form of attorney fees without statutory authorization. (Stats.1981, ch. 762, § 1, p. 2968; Bauguess v. Paine, supra, 22 Cal.3d at pp. 637-639, 150 Cal.Rptr. 461, 586 P.2d 942; Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc. (1997) 60 Cal.App.4th 352, 367, 70 Cal.Rptr.2d 449.) Section 128.5, subdivision (a) authorizes trial courts to award attorney fees incurred as a result of "bad faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." In 1994, the Legislature decided to try a different approach to sanctions based on rule 11 of the Federal Rules of Civil Procedure (Fed. Rules Civ. Proc, rule 11, 28 U.S.C; hereafter, "rule 11"). To that end, the Legislature enacted section 128.7. Like rule 11, section 128.7 makes sanctions, including an award of attorney fees, contingent on violation of the implied certification that pleadings and other papers filed with the court have factual and legal merit and are not being presented for an improper purpose. (Levy v. Blum (2001) 92 Cal.App.4th 625, 636, 112 Cal.Rptr.2d 144; Barnes v. Department of Corrections (1999) 74 Cal.App.4th 126, 132, 87 Cal.Rptr.2d 594.)
*576 The Legislature specified that section 128.7 would be repealed as of January 1, 1999 unless a later statute deleted or extended the repeal date. (Former § 128.7, subd. (j); Stats.1994, ch. 1062, § 3, pp. 6397-6399.) In 1998 the Legislature extended the repeal date of section 128.7 to January 1, 2003. It also added section 128.6, a provision identical to the pre 1995 version of section 128.5, except for a subdivision specifying that the section would become operative only if section 128.7 were allowed to expire. (Stats.1998, ch. 121, pp. 602-604; § 128.6, subd. (f).) This year, the Legislature extended the repeal date of section 128.7 to January 1, 2006. (Stats. 2002, ch. 491, § 1, p. 2339.)
The provisions at issue in this case were enacted as part of the 1994 legislation. (Stats.1994, ch. 1062, §§ 1 & 3, pp. 6395-6399.) Section 128.7, subdivision (i) states: "This section shall apply to a complaint or petition filed on or after January 1, 1995, and any other pleading, written notice of motion, or other similar paper filed in such a matter." Section 128.5, subdivision (b)(1), defining the kind of bad-faith conduct that may lead to sanctions, states: "`Actions or tactics' include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint only if the actions or tactics arise from a complaint filed, or a proceeding initiated, on or before December 31, 1994...."
These provisions have been widely viewed, in dicta from the courts and in treatises, as establishing mutually exclusive sanctions regimes, with section 128.5 controlling in proceedings initiated before January 1, 1995 and section 128.7 controlling thereafter. (See, e.g., Garcia v. McCutchen (1997) 16 Cal.4th 469, 481, fn. 8, 66 Cal.Rptr.2d 319, 940 P.2d 906; Levy v. Blum, supra, 92 Cal.App.4th 625, 638-639, 112 Cal.Rptr.2d 144; Bryan v. Bank of America (2001) 86 Cal.App.4th 185,196-197, 103 Cal.Rptr.2d 148; Trans-Action Commercial Investors, Ltd. v. Firmaterr, Inc., supra, 60 Cal.App.4th at pp. 369-370, 70 Cal.Rptr.2d 449; 7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 239, p. 280; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2002) ¶ 9:1010.) This view was encouraged by the Legislative Counsel's Digest accompanying the chaptered legislation in 1994, which stated that section 128.5 sanctions were limited to proceedings initiated on or before December 31, 1994. (Legis. Counsel's Dig., Assem. Bill No. 3594 (1993-1994 Reg. Sess.); see Trans-Action Commercial Investors, Ltd v. Firmaterr, Inc., supra, 60 Cal.App.4th at p. 369, 70 Cal. Rptr.2d 449.) Our Supreme Court also contributed to this interpretation by making an early comment that the sanctions legislation coming into effect in 1995 would "suspend the operation of section 128.5 ... substituting in its place ... a statute modelled on recently revised rule 11...." (Crowley v. Katleman (1994) 8 Cal.4th 666, 690, fn. 13, 34 Cal.Rptr.2d 386, 881 P.2d 1083.)
Nevertheless, interpretations found in the Legislative Counsel's Digest are not binding on the courts. (People v. Cruz (1996) 13 Cal.4th 764, 780, 55 Cal. Rptr.2d 117, 919 P.2d 731.) And while dicta from our Supreme Court are persuasive and should ordinarily be followed, this sound advice is only controlling when the Supreme Court has conducted "a thorough analysis of the issues and such analysis reflects compelling logic." (Hubbard v. Superior Court (1997) 66 Cal.App.4th 1163, 1169, 78 Cal.Rptr.2d 819; cf. Dyer v. Superior Court (1997) 56 Cal.App.4th 61, 66-68, 65 Cal.Rptr.2d 85; Fireman's Fund Ins. Co. v. Maryland Casualty Co. (1998) 65 Cal.App.4th 1279, 1300-1301, 77 Cal. Rptr.2d 296.) Both in Crowley v. Katieman, *577 supra, 8 Cal.4th at p. 690, footnote 13, 34 Cal.Rptr.2d 386, 881 P.2d 1083, and Garcia v. McCutchen, supra, 16 Cal.4th at p. 481, footnote 8, 66 Cal.Rptr.2d 319, 940 P.2d 906, the Supreme Court touched on the operative dates of sections 128.5 and 128.7 only in conclusory, passing fashion. We are convinced that a closer look at the statutory language and the federal model from which section 128.7 was drawn shows that the Legislature replaced section 128.5 with section 128.7 for purposes of sanctioning misconduct associated with pleadings and other filings, but left section 128.5 in effect for other kinds of litigation abuses.
We begin by examining the language of the statute, giving the words their ordinary meaning and considering them in the context of the statutory framework as a whole. (Barnes v. Department of Corrections, supra, 74 Cal.App.4th at p. 131, 87 Cal.Rptr.2d 594.) Comparing the provisions of section 128.5, subdivision (b)(1) with those of section 128.7, subdivision (i), it is immediately apparent that the Legislature did not follow the same pattern in establishing the effective dates of the two statutes. It stated that section 128.7 would apply to pleadings filed on or after January 1, 1995. (§ 128.7, subd. (i).) But section 128.5 was not similarly amended to apply only to pleadings filed before January 1, 1995. Instead, the Legislature inserted a limiting provision in the definition of sanctionable conduct, specifying that such conduct would include pleadings only if the conduct occurred in a proceeding initiated on or before December 31, 1994. (§ 128.5, subd. (b)(1).) Thus, the Legislature limited the scope of section 128.5, narrowing its application after 1994 to sanctions for conduct not involving pleadings.
The co-ordination of these two statutes was clearly not perfect. Literally applied, section 128.7 would apply to pleadings filed after January 1, 1995 at the same time section 128.5 applied to pleadings filed after January 1, 1995 but in proceedings initiated on or before December 31, 1994. The courts have had to reconcile this conflict by construing section 128.7, subdivision (i) as if it referred to pleadings filed in proceedings initiated on or after January 1, 1995. (Murphy v. Yale Materials Handling Corp. (1997) 54 Cal.App.4th 619, 623-624, 62 Cal.Rptr.2d 865; Levy v. Blum, supra, 92 Cal.App.4th at p. 639, 112 Cal.Rptr.2d 144.) Similarly, section 128.7, subdivision (i) refers to "a complaint or petition ... and any other pleading, written notice of motion, or other similar paper filed ...." whereas section 128.5, subdivision (b)(1) refers, as it did before the enactment of section 128.7, to "the making or opposing of motions or the filing and service of a complaint or cross-complaint...." These provisions can be reconciled by construing section 128.5, subdivision (b)(1) as if it referred to the same pleadings as section 128.7, subdivision (i).
No such feat of interpretation is required, however, to recognize that the two statutes apply concurrently. The statement in section 128.5, subdivision (b)(1) that sanctionable tactics "include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint only if the actions or tactics arise from a complaint filed, or a proceeding initiated, on or before December 31, 1994" naturally means that sanctionable tactics do not include pleadings in proceedings initiated after 1994. It does not imply that other kinds of abusive tactics are excluded after that time. To read the modifying phrase "but are not limited to" as if it were subject to the statute's time limitation would confound the Legislature's syntax and contradict the clear implications of its decision not to amend section 128.5 so as to mirror section 128.7, subdivision (i). Had the Legislature desired *578 to make the two provisions entirely mutually exclusive, it would have been a simple matter to add a subdivision to section 128.5 limiting its application for all purposes to proceedings initiated before 1995. Instead, the Legislature limited the kind of conduct governed by section 128.5 after 1994 so that it would not overlap with section 128.7 while the newer statute is in effect.[3]
Our reading of these statutes is bolstered by reference to federal sanctions law. Federal courts, unlike California courts, have inherent power to award attorney fees as sanctions for the "full range of litigation abuses." (Chambers v. NASCO, Inc. (1991) 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27; Bryan v. Bank of America, supra, 86 Cal.App.4th at pp. 195-196, fn. 6, 103 Cal.Rptr.2d 148; see also, e.g., First Bank of Marietta v. Hartford Undenvriters Ins. Co. (6th Cir.2002) 307 F.3d 501, 511-512.) As noted above, section 128.5 was enacted by our Legislature to give California trial courts statutory authority to award fees as sanctions for a broad range of misconduct, after the courts were denied that inherent authority by Bauguess v. Paine, supra, 22 Cal.3d at pp. 637-639, 150 Cal.Rptr. 461, 586 P.2d 942. There is no indication that when the Legislature decided to follow the federal example set by rule 11 for sanctioning pleading abuses, it intended to strip California courts of their power to impose fees as sanctions for other kinds of abusive conduct. We do not think the Legislature meant to adopt a weakened version of federal sanctions law. Rather, it emulated rule 11 by enacting section 128.7, while retaining section 128.5 as a counterpart to the federal courts' inherent sanctioning authority, applicable to the full range of litigation abuses not covered by section 128.7.
Accordingly, the trial court erred by refusing to apply section 128.5 based on the time limitation in subdivision (b)(1). It is for the trial court to rule on the merits of Gallagher's sanctions motion in the first instance; we express no view on whether section 128.5 sanctions are proper under the circumstances of this case.

2. Section 2023

Section 2023, subdivision (a) provides that "[m]isuses of the discovery process include, but are not limited to" nine listed abuses, including "[m]aking an evasive response to discovery." (§ 2023, subd. (a)(6).)[4] Section 2023, subdivision (b)(1) *579 authorizes the court to impose sanctions for misuse of the discovery process in the amount of "the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct."
Gallagher contends the trial court placed an unduly rigid construction on section 2023 when it ruled that a false interrogatory answer does not qualify as an "evasive response" under subdivision (a)(6), or as any other form of "misuse of the discovery process."[5] We agree. The court focused too narrowly on whether a falsehood can qualify as an "evasive response." Section 2023, subdivision (a) makes it abundantly clear that the enumerated abuses are not intended to be an exhaustive catalog. (See also Mattco Forge, Inc. v. Arthur Young & Co. (1990) 223 Cal.App.3d 1429, 1440-1441, 273 Cal. Rptr. 262; Palm Valley Homeowners Assn., Inc. v. Design MTC (2000) 85 Cal. App.4th 553, 563-564, 102 Cal.Rptr.2d 350.) It has long been settled that the discovery statutes must be liberally interpreted to further their principal purpose, which is "to educate the parties concerning their claims and defenses so as to encourage settlements and to expedite and facilitate trial." (Emerson Electric Co. v. Superior Court (1997) 16 Cal.4th 1101, 1107, 68 Cal.Rptr.2d 883, 946 P.2d 841; Greyhound Corp. v. Superior Court (1961) 56 Cal.2d 355, 376-377, 15 Cal.Rptr. 90, 364 P.2d 266.)
Gallagher claims that had it known about plaintiffs' CalTrans claim, the prospects of settlement would have been greatly enhanced. Plaintiffs' false interrogatory answer, while it may not have been an "evasive response" in the most literal sense, effectively evaded their duty to provide accurate answers. The trial court erred by refusing to consider sanctions under section 2023 merely because plaintiffs provided a direct answer. A similar situation was presented in Sherman v. Kinetic Concepts, Inc. (1998) 67 Cal.App.4th 1152, 79 Cal.Rptr.2d 641. There, the plaintiffs discovered after trial that the defendant had failed to disclose 21 of 24 prior complaints involving the defective product at issue, despite the plaintiffs' requests for such information during discovery. (Id. at pp. 1157, 1159, 79 Cal.Rptr.2d 641.) The trial court ruled that discovery sanctions could not be imposed after trial. (Id. at p. 1160, 79 Cal.Rptr.2d 641.) The Court of Appeal reversed, declaring itself "appalled" by the defendant's admission *580 that it had intentionally withheld the information. (Id. at p. 1162, 79 Cal.Rptr.2d 641.) The court stated that monetary sanctions under section 2023 were mandated in these circumstances. (Id at p. 1163, 79 Cal.Rptr.2d 641.)
Our Supreme Court has also indicated that section 2023, subdivision (a) is not to be narrowly construed. In Cedars Sinai Medical Center v. Superior Court (1998) 18 Cal.4th 1, 74 Cal.Rptr.2d 248, 954 P.2d 511 (Cedars-Sinai), the court declined to recognize a tort remedy for intentional destruction of evidence by a party. (Id at p. 4, 74 Cal.Rptr.2d 248, 954 P.2d 511.) Central to the court's reasoning was the existence of other adequate remedies, including discovery sanctions. (Id. at pp. 11-13, 74 Cal.Rptr.2d 248, 954 P.2d 511.) The court stated: "[O]ur discovery laws provide a broad range of sanctions for conduct that amounts to a `misuse of the discovery process.' ([ ] § 2023, subd. (b).) Section 2023[ ] gives examples of misuses of discovery, including `[f]ailing to respond or to submit to an authorized method of discovery' (id, subd. (a)(4)) or `[m]aking an evasive response to discovery.' (Id, subd. (a)(6).) Destroying evidence in response to a discovery request after litigation has commenced would surely be a misuse of discovery within the meaning of section 2023, as would such destruction in anticipation of a discovery request." (Cedars-Sinai, supra, 18 Cal.4th at p. 12, 74 Cal. Rptr.2d 248, 954 P.2d 511.)
If destroying evidence qualifies as a "misuse of discovery," even though such conduct is not specifically mentioned in section 2023, subdivision (a), then a blatantly false response must also qualify. Section 2030, subdivision (f)(1) requires interrogatory responses to be "as complete and straightforward as the information reasonably available to the responding party permits." If flouting this fundamental requirement did not expose the responding party to discovery sanctions, section 2023 remedies would not be the "potent" deterrent contemplated by the Cedars-Sinai court. (Cedars-Sinai, supra, 18 Cal.4th at p. 12, 74 Cal.Rptr.2d 248, 954 P.2d 511.)[6] Plaintiffs insist their false answer was simply a mistake. However, a discovery abuse need not be willful to be sanctionable. (Ghanooni v. Super Shuttle (1993) 20 Cal.App.4th 256, 260, 24 Cal.Rptr.2d 501; Kohan v. Cohan (1991) 229 Cal.App.3d 967, 971, 280 Cal.Rptr. 474.) Plaintiffs' obligation was to furnish "reasonably available" information.
Again, we leave it for the trial court to determine in the first instance whether sanctions are appropriate, since the court never reached the factual issues or exercised its discretion under section 2023, subdivision (b)(1).

DISPOSITION
The orders denying sanctions are reversed. Gallagher shall recover its costs on appeal.
We concur: McGUINESS, P.J., and CORRIGAN, J.
NOTES
[1] Further unspecified statutory references are to the Code of Civil Procedure.
[2] Section 128.7 authorizes trial courts to impose sanctions for abusive litigation practices committed in pleadings and other papers filed on or after January 1, 1995. (§ 128.7, subds.(b) & (c).) Section 128.5 authorizes sanctions for "bad-faith actions or tactics," which "include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint only if the actions or tactics arise from a complaint filed, or a proceeding initiated, on or before December 31, 1994." (§ 128.5, subds.(a) & (b)(D.)
[3] The enactment of section 128.6 in 1998 was consistent with the concurrent application of sections 128.5 and 128.7. Section 128.6 simply restores the comprehensive sanctions authority provided by the former version of section 128.5, in the event the Legislature fails to re-extend the repeal date of section 128.7. It indicates the Legislature was concerned to avoid gaps in the statutory scheme governing sanctions. If section 128.5 were not currently effective, of course, there would be a significant gap in post-1994 proceedingsno sanctions would be available for litigation abuses not committed in pleadings and not covered by another specific sanctions statute.
[4] The other enumerated "misuses" are:

"(1) Persisting, over objection and without substantial justification, in an attempt to obtain information or materials; that are outside the scope of permissible discovery.
"(2) Using a discovery method in a manner that does not comply with its specified procedures.
"(3) Employing a discovery method in a manner or to an extent that causes unwarranted annoyance, embarrassment, or oppression, or undue burden and expense.
"(4) Failing to respond or to submit to an authorized method of discovery.
"(5) Making, without substantial justification, an unmeritorious (fn.omitted) objection to discovery.
....................................
"(7) Disobeying a court order to provide discovery.
"(8) Making or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery.
"(9) Failing to confer in person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith attempt to resolve informally any dispute concerning discovery, if the section governing a particular discovery motion requires the filing of a declaration stating facts showing that such an attempt has been made ..." (§ 2023, subd. (a).)
[5] Plaintiffs contend Gallagher waived its right to seek sanctions under section 2023 by failing to seek discovery sanctions in its first motion. They argue that Gallagher failed to meet the reconsideration requirements of section 1008. We cannot say the trial court abused its discretion by granting reconsideration. Gallagher explained that its discovery of the CalTrans lawsuit several days before filing its reply memorandum for the original motion precluded it from fully briefing the sanctions applicable to plaintiffs' false denial of the existence of such a claim in their interrogatory responses. Gallagher could not have raised a new legal basis for sanctions for the first time in its reply papers, without necessitating a continuance to allow plaintiffs to brief the issue. Under these circumstances, the court could reasonably find that section 1008's requirement of "new or different facts, circumstances, or law" was met. (Compare Garcia v. Hejmadi (1997) 58 Cal. App.4th 674, 690, 68 Cal.Rptr.2d 228; Baldwin v. Home Savings of America (1997) 59 Cal.App.4th 1192, 1196, 69 Cal.Rptr.2d 592.)
[6] The sanctions provisions of the interrogatory statute do not include penalties for providing false answers. (Section 2030, subds. (e), (k).) Section 2023, subdivision (b), however, makes it clear that discovery sanctions may be imposed "[t]o the extent authorized by the section governing any particular discovery method or any other provision of this article." (Italics added.)