[No. E025519. Fourth Dist., Div. Two. Dec. 15, 2000.]

PALM VALLEY HOMEOWNERS ASSOCIATION, INC., Plaintiff and Respondent, v.
DESIGN MTC, Defendant;
EDWARDS, SOOY & BYRON, Objector and Appellant.

554

COUNSEL

Edwards, Sooy & Byron and Michael M. Edwards for Objector and Appellant.

Thorsnes, Bartolotta & McGuire, C. Brant Noziska, Neal H. Rockwood and Timothy J. Tatro for Plaintiff and Respondent.

OPINION

**WARD, J.**—Appellant law firm Edwards, Sooy & Byron (the firm) appeals after the trial court imposed sanctions upon it for asserted bad faith acts and

discovery abuses in the underlying construction defect litigation. The basis for the imposition of sanctions was that the firm pursued litigation activities on behalf of its client, even after the firm knew that the client was a suspended corporation.

The firm contends that the trial court abused its discretion in imposing sanctions: The rule is clear that a corporation suspended for nonpayment of taxes may not defend itself in litigation. The firm's client, however, was suspended for failure to file a required information statement with the Secretary of State, and not for nonpayment of taxes. Whether these two types of corporate suspensions both result in a disqualification from litigation appears to be a question of first impression.

We conclude that, although the statutory provisions suspending a corporation for failure to file a required statement have not yet been so construed in any published California case, those provisions would make clear to any reasonable attorney that a corporation suspended under the Corporations Code, like a corporation suspended under the Revenue and Taxation Code, is also disabled from participating in litigation activities. At the least, the facts before the trial court support the view that the firm did not rely upon any purported distinction between a Corporations Code suspension and a Revenue and Taxation Code suspension in deciding to conceal its knowledge of the client's suspended status from the court and opposing counsel. Thus, the court did not abuse its discretion in finding that the firm acted in bad faith, and in assessing sanctions accordingly. We therefore affirm the award of sanctions.

## FACTS AND PROCEDURAL HISTORY

Plaintiff and respondent, Palm Valley Homeowners Association, Inc. (homeowners), filed a construction defect lawsuit against the developer of their homes. The developer in turn cross-complained against subcontractors and suppliers that had worked on the project. In 1996, homeowners named a company called Design MTC in place of one of the subcontractor Doe defendants. The firm represented Design MTC.

The firm, on behalf of Design MTC, answered both the developer's cross-complaint and the homeowners' complaint by June 16, 1997. In March of 1998, the firm learned that its client, Design MTC, was a suspended corporation. Design MTC's suspension was not for nonpayment of taxes, however, as provided under Revenue and Taxation Code section 23301; rather, Design MTC was suspended after failing to file a required informational statement with the Secretary of State, as provided in Corporations Code section 2205.

The firm did not report the suspension to the court or to any other parties; the firm continued to represent Design MTC in the litigation, filing and responding to pleadings and motions. In July 1998, for example, the firm filed motions for summary judgment on Design MTC's behalf, against both the homeowners on the complaint and the developer on its cross-complaint.

On August 5, 1998, the homeowners' investigator discovered that Design MTC was a suspended corporation. The homeowners' attorneys notified the firm on August 27, 1998, that it had learned of Design MTC's suspension. At a court hearing on August 28, 1998, the homeowners' attorneys reported to the court that Design MTC was a suspended corporation, erroneously stating that it had been suspended under the Revenue and Taxation Code. The court granted the homeowners an order shortening time for bringing a motion to strike Design MTC's answer, and also took Design MTC's summary judgment motions off calendar.

Homeowners moved for sanctions against Design MTC and the firm. The firm appeared for Design MTC at the sanctions hearing, and objected to the proceedings. The court ruled that neither Design MTC nor the firm had the right to appear at the hearing on account of Design MTC's suspended status. The court granted the motion for sanctions and set a further date for a prove-up hearing.

On or about September 25, 1998, homeowners filed their memorandum of costs, and requested $89,490.02 in sanctions. On or about September 29, 1998, the firm filed a petition for writ of mandate in this court. (*Edwards, Sooy & Byron v. Superior Court* (Sept. 29, 1998, E023496) [nonpub. opn.].) On October 5, 1998, this court stayed proceedings on the sanctions. We thereafter issued a writ commanding the trial court to vacate its earlier sanctions order, and to hold a new hearing, affording the firm both notice and an opportunity to appear and defend itself against the request for sanctions. At the firm's request, we have taken judicial notice of our file in the earlier writ proceeding, *Edwards, Sooy & Byron v. Superior Court, supra*, E023496.

On December 4, 1998, the court again heard the homeowners' motion for sanctions. The firm opposed the motion, arguing that, because Design MTC was not suspended for nonpayment of taxes, the disabilities applicable to a tax-suspended corporation (Rev. & Tax. Code, § 23301) should not apply. The firm argued that it had believed in good faith that a suspension under the Corporations Code did not impose the same litigation disabilities as a tax suspension.

The court took the matter under submission and, on February 3, 1999, ruled that the firm had violated both Code of Civil Procedure sections 128.5 (frivolous actions taken in bad faith) and 2023 (discovery abuses), and imposed sanctions of $14,241.35.

The firm appeals the sanctions order.

ANALYSIS

I.   *Standard of Review*

■ "We review the imposition of monetary sanctions for a prejudicial abuse of discretion." (*20th Century Ins. Co. v. Choong* (2000) 79 Cal.App.4th 1274, 1277 [94 Cal.Rptr.2d 753].)

II.  *The Trial Court Did Not Abuse Its Discretion in Imposing Sanctions on the Firm for Continuing to Represent a Suspended Corporation*

■ The firm argues that the trial court abused its discretion in imposing sanctions. There are two prongs to the argument.

First, sanctions were imposed in part under Code of Civil Procedure section 128.5, for alleged bad faith acts, which were frivolous or undertaken for delay. The firm contends that its client was suspended under the Corporations Code, and not under the Revenue and Taxation Code for nonpayment of taxes. The statutory suspension provisions of the Corporations Code have never been interpreted expressly to indicate that a corporation suspended for failure to file the required information statement is legally disabled from acting to the same extent as a corporation suspended under the Revenue and Taxation Code for nonpayment of taxes. The firm argues that the court below erred in (1) finding a Corporations Code suspension the same as a Revenue and Taxation Code suspension, and (2) finding that the firm acted in bad faith in believing the two kinds of suspensions should be treated differently.

A finding of abuse of discretion in imposing sanctions under Code of Civil Procedure section 128.5 thus depends in part upon whether the trial court correctly interpreted the relevant statutes, and in part upon its assessment of the firm's good faith or bad faith in taking the positions it did.

The second prong of the firm's argument is that the court abused its discretion in imposing sanctions under Code of Civil Procedure section 2023, for discovery abuse. That is, the firm contends that its conduct in

representing its client during ongoing discovery is not, in itself, an abuse of the discovery process. Neither the client nor the firm, for example, refused to provide relevant requested discovery, interposed abusive discovery requests, or did anything to harm or delay the regular processes of discovery. The sole bad act claimed was the fact of participating in discovery while the corporation was suspended.

We address each argument in turn.

A. *A Corporation Suspended Under Corporations Code Section 2205 for Failure to File a Required Information Statement Is Disabled from Participating in Litigation, as Is a Corporation Suspended Under Revenue and Taxation Code Section 23301 for Nonpayment of Taxes*

Corporations Code section 1502 provides that every corporation must file a statement every two years[1] containing such information as the corporation's current directors, the number of board vacancies, if any, the current officers, and the name and address of a person in the state, designated to receive service of legal process upon the corporation. Corporations Code section 2204 provides that, if a corporation fails to file its required information statement under section 1502, the Secretary of State shall give notice of the delinquency; 60 days after notice of the delinquency, the Secretary of State must certify the name of the corporation to the Franchise Tax Board, and the Franchise Tax Board imposes a penalty upon the corporation.[2]

If a corporation fails to file a statement under Corporations Code section 1502, fails to file a statement for 24 months, and has been assessed a penalty under Corporations Code section 2204 during that 24-month period, then the corporation is subject to suspension under Corporations Code section 2205. The Secretary of State must notify the corporation that "its corporate powers, rights, and privileges" will be suspended after an additional 60 days, if it fails to file a statement under section 1502. If the corporation fails to comply within 60 days, the Secretary of State certifies to the Franchise Tax Board that the corporation is suspended, and mails a notice to the suspended corporation. "[T]hereupon, except for the purpose of amending the articles of incorporation to set forth a new name, the corporate powers, rights, and privileges of the corporation are suspended." (Corp. Code, § 2205, subd. (c).)

Corporations Code section 2205, subdivision (d), provides that, notwithstanding the suspension, the corporation is empowered to file a statement

---

[1]In 1999, the Legislature amended Corporations Code section 1502 to require biennial instead of annual statements. (Stats. 1999, ch. 1000, § 20.)

[2]The penalty imposed by the Franchise Tax Board is made as provided in section 19141 of the Revenue and Taxation Code, and is currently $250.

under section 1502; if it does so, the Secretary of State "shall certify that fact to the Franchise Tax Board and the corporation may thereupon be relieved from suspension" unless it is also suspended by the Franchise Tax Board for nonpayment of taxes. Before Corporations Code section 2205 was amended in 1999, it provided that the Secretary of State must certify the suspended corporation's compliance with section 1502 to the Franchise Tax Board, and that the corporation may "thereupon, *in accordance with Section 23305a of the Revenue and Taxation Code,* be relieved from suspension . . . ." (Italics added; see Stats. 1999, ch. 1000, § 23.) The italicized language was in effect at the time of all the events herein.

We think it plain upon a reading of the statutory provisions that a corporation suspended for failure to file a required statement under Corporations Code section 1502 is, like a corporation suspended for failure to pay taxes under Revenue and Taxation Code section 23301, disabled from participating in any litigation activities.

The firm concedes that a corporation suspended for nonpayment of taxes is disabled from resort to the courts for any purpose. "The purpose of Revenue and Taxation Code section 23301 is to 'prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern' [citation], and to pressure it to pay its taxes [citation]." (*Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1306 [87 Cal.Rptr.2d 358].) The firm argues that such a statutory purpose, i.e., collection of taxes, does not apply when a corporation is suspended for failure to file a statement, and not for nonpayment of taxes. Thus, the firm argues, it could reasonably believe that a suspension under the Corporations Code did not disqualify it from access to or use of the courts.

We disagree. Corporations Code section 2205, subdivision (b) expressly states that the failure to file the required statement will result in suspension of a corporation's "corporate powers, rights, and privileges." This parallels the language of Revenue and Taxation Code section 23301, which provides that "*the corporate powers, rights and privileges* of a domestic taxpayer may be suspended" for nonpayment of taxes. (Italics added.)

Corporations Code section 2205, subdivision (c) makes clear that, "except for the purpose of amending the articles of incorporation to set forth a new name," the suspended corporation may transact no business of any kind. Conducting litigation is not "amending the articles of incorporation to set forth a new name."

Corporations Code section 2205, former subdivision (d), at all times relevant herein, provided that a suspended corporation could be restored

upon filing the required statement "in accordance with Section 23305a of the Revenue and Taxation Code." Section 23305a of the Revenue and Taxation Code sets forth the prerequisites to issuance of a certificate of revivor by the Franchise Tax Board.

All these statutory provisions should strongly indicate to any reasonable attorney that a corporation suspended for failure to file a statement under Corporations Code section 1502 is indeed disqualified from litigation and all other activities. *All* its "corporate powers, rights, and privileges" are suspended; the only exceptions provided by statute are to change the name of the corporation, and to cure the default by filing the missing statement.

Cross-references to the Revenue and Taxation Code also clearly indicate that a corporation suspended under the Corporations Code is equally disabled from acting as a corporation suspended under the Revenue and Taxation Code. Indeed, the penalty provided under Corporations Code section 2204 is imposed under Revenue and Taxation Code section 19141; the $250 penalty imposed under that provision is expressly made "a final assessment due and payable at the time of assessment," and it "shall be collected as other taxes, interest, and penalties are collected by the Franchise Tax Board . . . ."

Just as the state may wish to persuade its corporate citizens to pay their taxes, it also may wish to persuade them to comply with basic filing requirements, requirements that are fundamental to holding a corporation accountable for its actions.

The statutory language of the relevant sections, as well as legislative policy, are more than sufficient to put any reasonable attorney on notice—or at least to entertain a reasonable suspicion—that a corporation suspended under the Corporations Code, like a corporation suspended for nonpayment of taxes, is well and truly suspended, and disabled from participating in any litigation activities.

The trial court did not err in so construing the statutes, and thus did not abuse its discretion in determining that the firm knew or should have known that Design MTC was disqualified from representing itself in the litigation.

Our conclusion is further buttressed by *Signal Data Proc. v. Rex Humbard Found.* (1994) 99 Ohio App.3d 646 [651 N.E.2d 498]. There the Ohio Court of Appeals held that a California corporation suspended pursuant to Corporations Code section 2205, for failure to file a statement, lacked authority to register a California judgment in Ohio, or to authorize an attorney to act in

its behalf, and would remain so unless and until it cured the deficiency which had caused its suspension.

### B. *The Trial Court Did Not Abuse Its Discretion in Determining That the Firm Had Acted in Bad Faith in Pursuing Litigation Activities While Its Client Was Suspended*

■ The firm argues that, although we now have construed the Corporations Code suspension provisions in the same manner as the Revenue and Taxation Code suspension provisions, it could in good faith have believed that there was a legitimate difference in the effect of the two suspensions, and thus properly continued to represent its client despite its knowledge of the suspension.

The record belies the firm's assertions of good faith. The firm knew as of March 1998 of Design MTC's suspended status. Giving the benefit of any doubt to the firm, that it in fact researched the matter at that time and discovered that Design MTC was suspended for failure to file a Corporations Code section 1502 statement, and not for nonpayment of taxes, we think it inescapable that any reasonable attorney reviewing the relevant statutes would entertain a strong suspicion that Design MTC was disqualified from exercising any powers, including the right to resort to the courts in litigation. Nevertheless, the firm chose to conceal its knowledge of the suspension, and probable disability of its client, from both the court and opposing counsel. Knowing concealment of material facts is not the hallmark of good faith.

The firm urges that it could not discharge its ethical duties to represent its client, if it had to reveal the client's suspended status to the court and counsel. Not so. If the corporation had been suspended for nonpayment of taxes, the client's disability would have been clear, and the attorney's duty to report that to the court would also have been clear. The attorney's obligation to its client would be to advise the client to pay its back taxes. If the client corporation is in such financial straits that it has been unable to pay its taxes, to the degree that it has become suspended, such advice may ring hollow. Where a corporation has been suspended for noncompliance with filing requirements, however, curing the default is simple. All the client corporation must do is file the required statement under Corporations Code section 1502. The firm did not, however, make any such recommendation to its client, Design MTC. This failure supports the inference that the firm in fact made no investigation at the time it discovered its client's suspended status, and that it therefore likely believed Design MTC was suspended for failure to pay taxes. If so, then the firm's willful concealment of the suspension militates toward a finding of bad faith.

Other evidence supports this conclusion. Remarks made by the firm's attorneys at hearings on the sanctions motion indicate that the firm did not consciously decide that Design MTC's suspension was not of a kind that should disable it from litigation. Rather, it appears that this theory was a post hoc rationalization, and did not occur to the firm's attorneys until the eve of the sanctions hearing. At the hearing on August 28, 1998, Design MTC's counsel stated that he had "had no time to look into" the question whether the corporate suspension resulted in the corporation's lack of standing to litigate. At the first sanctions hearing on September 4, 1998, the firm's representative stated to the court: "When we appeared [on August 28], we were not prepared to address the issue of the suspension with the Court. . . . [¶] After we had the opportunity to look at the documents . . . it was learned that in fact MTC Design was not suspended for failure to pay taxes. [¶] Therefore, it's our position that the tax and revenue codes that provide that a suspended corporation cannot represent itself in court do not apply."

The record fully supports the conclusion that the firm did not continue representing Design MTC based on its good faith belief in the difference between a Corporations Code suspension and a Revenue and Taxation Code suspension; it supports the conclusion, rather, that the firm suspected its client was disabled from litigation, but deliberately concealed this fact from the court and the other parties, and continued to litigate vigorously, even seeking summary proceedings to terminate the case before the corporation's suspended status was discovered. The firm's actions on behalf of its client served only to delay and avoid an otherwise inevitable default judgment, in the absence of any acts by Design MTC to cure its suspended status.

The trial court did not abuse its discretion in taking this view of the evidence and record before it; consequently, it did not abuse its discretion in imposing sanctions therefor.

C. *The Court Did Not Abuse Its Discretion in Imposing Discovery Sanctions*

█ The firm argues that imposition of sanctions in reliance on Code of Civil Procedure section 2023 was improper, because the firm did not engage in any abuse of the discovery process itself.

The homeowners note, as the firm concedes, that the conduct listed in Code of Civil Procedure section 2023 as sanctionable discovery abuses is not exclusive. In our view, participating in discovery on behalf of a suspended corporation, knowing that the corporation is suspended, and having reason to

know or suspect that such suspension disabled the corporation from participating in the litigation, qualifies as conduct abusive of the discovery process, and thus sanctionable. We cannot see any abuse of discretion in so holding, particularly if the sanctions order was also fully justified on other grounds.

## DISPOSITION

For the reasons stated, we find no abuse of discretion in imposing the order for sanctions on the firm. The order for sanctions is affirmed.

Hollenhorst, Acting P. J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 28, 2001.