Filed 11/22/21  P. ex rel. Dept. of Ins. v. Symons Emergency Specialties CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE ex rel. DEPARTMENT OF INSURANCE et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> SYMONS EMERGENCY SPECIALTIES, INC., et al., <br><br> Defendants and Appellants. | E075600 <br><br> (Super.Ct.No. CIVDS1607744) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County.  Wilfred J. Schneider, Jr., Judge.  Affirmed.

Garcia Reed & Ramirez and Raul B. Garcia for the Defendants and Appellants.

Kennaday Leavitt and Curtis S. Leavitt for Plaintiffs and Respondents The People ex rel. Sistemas Medicos Nacionaies, S.A. de C.V.

No appearance for Plaintiff and Respondent The People ex rel. Department of Insurance.

This qui tam action was brought by a Mexican health care plan, Sistemas Medicos Nacionales S.A. de C.V. dba SIMNSA Health Plan (SIMNSA), licensed to do business on a limited basis in California. SIMNSA alleged that defendants committed insurance fraud.[1] The California Department of Insurance intervened and litigated the case on behalf of the state, although SIMNSA continued to participate as the relator. The case went to trial, and the jury rendered a verdict for defendants.

After the court entered judgment, defendants moved for attorney fees and costs as sanctions against SIMNSA and its counsel. Defendants argue that the trial court erred by denying their sanctions motion. They contend that SIMNSA and counsel engaged in sanctionable conduct by prosecuting this action while SIMNSA lacked a certificate of qualification to transact intrastate business. (Corp. Code, § 2105, subd. (a).) We affirm.

BACKGROUND

In 2000, SIMNSA obtained a license from the California Department of Corporations to operate as a health care service plan in the state. The department issued the license under Health and Safety Code section 1351.2, which provides for the licensure of Mexican prepaid health care plans under certain conditions. Specifically, the license authorizes SIMNSA to sell "employer-sponsored group plan contracts exclusively for the benefit of citizens of Mexico legally employed in California." (Capitalization and boldface omitted.) Under the license, SIMNSA provides health care services "wholly in Mexico," except that emergency and urgent care services are available outside of Mexico.

---

[1] Defendants are Symons Emergency Specialties, Inc. (Symons); Symons Ambulance; Jeff T. Grange; and Jeff T. Grange, M.D., Inc.

2

(Capitalization and boldface omitted.) The license is effective until SIMNSA surrenders it or the state suspends or revokes it.

In 2014, Symons provided emergency services in California to an individual insured by SIMNSA. SIMNSA refused to pay Symons's claim, so Symons sued SIMNSA. The parties settled that lawsuit.

In May 2016, SIMNSA brought this qui tam action against Symons and the other defendants, alleging that defendants committed insurance fraud. (See Pen. Code, § 550 [criminalizing insurance fraud]; Ins. Code, § 1871.7, subds. (b), (e)(1) [authorizing interested parties to bring a civil action in the name of the state for violations of Pen. Code, § 550]; *State ex rel. Aetna Health of California, Inc. v. Pain Management Specialist Medical Group* (2020) 58 Cal.App.5th 1064, 1069 (*Aetna*) ["[A] qui tam action is one brought pursuant to a statute allowing a private person to sue as a private attorney general to recover damages or penalties, all or part of which is paid to the government"].)

The Department of Insurance intervened in July 2017. The amended complaint in intervention alleged that defendants submitted false, fraudulent, or misleading health care insurance claims to SIMNSA and other health care insurers. The department assumed primary responsibility for litigating the case and controlled the overall strategy, but it permitted SIMNSA to participate extensively as the relator. (See *Aetna*, *supra*, 58 Cal.App.5th at p. 1070 [the state "retains primacy of a qui tam action" under Insurance Code section 1871.7 and "can dismiss the action, intervene in the action, or permit the

3

relator to continue"].)  The Department of Insurance intended to prosecute the case whether or not SIMNSA participated.

The trial began in February 2020.  Early in the trial, defendants orally moved to sever SIMNSA from the case on the ground that SIMNSA had not obtained a certificate of qualification to transact intrastate business in California.  (Corp. Code, § 2105, subd. (a) [requiring foreign corporations to obtain a certificate of qualification from the Secretary of State before "transact[ing] intrastate business"]; Corp. Code, § 191, subd. (a) [defining "'transact intrastate business'" and distinguishing intrastate business from interstate and foreign commerce].)  Defendants argued that Corporations Code section 2203, subdivision (c), barred SIMNSA from maintaining this action without the certificate of qualification.

SIMNSA's counsel was unaware that SIMNSA lacked a certificate of qualification until defendants raised the issue at trial.  But counsel knew that SIMNSA had a license to sell health care plans in California under Health and Safety Code section 1351.2.  Counsel investigated whether SIMNSA was required to have a certificate of qualification and believed that it was not, because the license under Health and Safety Code section 1351.2 qualified it to do business in the state.  Counsel argued to the trial court that SIMNSA was not required to have the certificate, but "in an abundance of caution," SIMNSA sought the certificate of qualification on an expedited basis.  SIMNSA obtained the certificate within days, and the trial proceeded without delay.

After the court entered judgment for defendants, they moved for attorney fees and costs in the amount of $355,880.07. They argued that SIMNSA's knowing maintenance of the action without a certificate of qualification amounted to sanctionable conduct under rule 2.30 of the California Rules of Court and Code of Civil Procedure sections 128.5 and 128.7. (Unlabeled statutory citations refer to the Code of Civil Procedure; unlabeled rule citations refer to the California Rules of Court.) Defendants filed the motion one day after they served it on SIMNSA.

SIMNSA opposed the motion on a number of grounds. In relevant part, it argued: (1) SIMNSA was engaged in interstate business, not intrastate business, so it was not required to have a certificate of qualification under Corporations Code section 2105; (2) even if SIMNSA were engaged in intrastate business, any defect was cured when it obtained the certificate; (3) defendants failed to comply with the safe harbor provision of section 128.5, and SIMNSA had not engaged in bad faith conduct warranting sanctions under that statute; and (4) defendants failed to identify which court rule SIMNSA had violated, as required by rule 2.30.

The trial court denied the sanctions motion. It ruled that sanctions under sections 128.5 and 128.7 would be improper because defendants did not comply with the safe harbor provisions of those statutes, and defendants could not seek postjudgment sanctions under those statutes for filing the complaint and maintaining the lawsuit. The court also rejected defendants' request for sanctions under rule 2.30.

5

STANDARD OF REVIEW

We review a trial court's ruling on a motion for sanctions for abuse of discretion. (*Primo Hospitality Group, Inc. v. Haney* (2019) 37 Cal.App.5th 165, 174 [sanctions motion under § 128.7]; *Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 893 [sanctions motion under § 128.5]; *Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1216-1217 [sanctions motion under rule 2.30].)

DISCUSSION

I.  *Rule 2.30*

Defendants contend that they "made a sufficient showing for sanctions to be considered" under rule 2.30.  (Capitalization and boldface omitted.)  We disagree.

Rule 2.30 authorizes the trial court to impose monetary sanctions for violations of the California Rules of Court.  (Rule 2.30(a), (b); *Vidrio v. Hernandez* (2009) 172 Cal.App.4th 1443, 1456-1458.)  The motion for sanctions must identify which rule the offending party has violated.  (Rule 2.30(c).)  Here, defendants' motion did not identify which rule SIMNSA had purportedly violated, nor do defendants identify a rule on appeal.  The court therefore did not abuse its discretion by denying the request for sanctions under rule 2.30.

II.  *Sections 128.5 and 128.7*

Defendants argue that the court erred by denying their motion under sections 128.5 and 128.7.  They contend that SIMNSA and its counsel engaged in sanctionable

conduct by prosecuting this action while SIMNSA lacked a certificate of qualification. The argument has no merit.

Under section 128.7, when a party presents a document to the court, the party implicitly certifies that (1) the document is not being presented primarily for an improper purpose, (2) the legal contentions in the document are nonfrivolous, and (3) the allegations or denials of fact in the document are warranted by the evidence. (§ 128.7, subd. (b).) Section 128.7 authorizes the court to impose sanctions, including attorney fees, for violating those implied certifications. (§ 128.7, subds. (c), (d).) Section 128.5 authorizes the court to impose sanctions, including attorney fees, for bad faith actions or tactics "that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a).)

Sections 128.7 and 128.5 contain safe harbor provisions. (*Nutrition Distribution, LLC v. Southern SARMs, Inc.* (2018) 20 Cal.App.5th 117, 129; *Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698 (*Martorana*).) Under both sections, service of the sanctions motion triggers a 21-day period during which the offending party may withdraw or correct the challenged actions. (§§ 128.5, subd. (f)(1)(B), 128.7, subd. (c)(1).) The party seeking sanctions may not file the motion unless the offending party fails to withdraw or correct its actions within the safe harbor period. (*Ibid*; *Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 130 (*Barnes*).)

By mandating a safe harbor period, the Legislature designed sections 128.5 and 128.7 to be remedial, not punitive. (*Changsha Metro Group Co., Ltd. v. Xufeng* (2020)

7

57 Cal.App.5th 1, 8; *Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 591

(*Li*).) The safe harbor provisions are intended to foster compliance with the statutory

standards of conduct, permit an offending party to avoid sanctions, and conserve judicial

resources that would otherwise be spent adjudicating a sanctions motion. (*Martorana*,

*supra*, 175 Cal.App.4th at p. 699; *Li*, *supra*, 177 Cal.App.4th at pp. 593-594.)

In this case, the court did not abuse its discretion by denying defendants' sanctions

motion. The motion was improper in that defendants attempted to circumvent the safe

harbor provisions and the remedial purpose of sections 128.5 and 128.7. Defendants

sought sanctions for SIMNSA's failure to have a certificate of qualification while

litigating this action. (Corp. Code, §§ 2105, subd. (a), 2203, subd. (c).) According to

defendants, this amounted to bad faith prosecution of a frivolous lawsuit under section

128.5 and a violation of section 128.7's implied certifications.

But regardless of whether SIMNSA needed the certificate of qualification,

SIMNSA corrected any defect by obtaining the certificate promptly after defendants

raised the issue.[2] Defendants cannot postpone their sanctions motion until after SIMNSA

has cured the problem and the case has proceeded to judgment, and then claim that the

safe harbor provisions do not apply because there is no corrective action available to

---

[2] The failure to have the certificate of qualification does not invalidate all of a corporation's litigation conduct. It is only "a matter of abatement of the action." (*United Medical Management Ltd. v. Gatto* (1996) 49 Cal.App.4th 1732, 1740.) That is, if a defendant proves that the corporation lacks capacity to maintain the lawsuit because it does not possess the certificate of qualification, the incapacity temporarily halts the proceedings until the corporation obtains the certificate. (*Id.* at pp. 1740-1741.) The purpose of the "suspension enforcement mechanism is to encourage qualification, rather than to penalize the failure to qualify earlier." (*Id.* at p. 1741.)

8

SIMNSA.  Such a result would defeat the purpose of the safe harbor provisions.  (See *Barnes*, *supra*, 74 Cal.App.4th at pp. 129, 132 [depriving the offending party of the opportunity to withdraw its allegedly frivolous lawsuit by moving for sanctions after entry of judgment defeated the purpose of the safe harbor provision].)  Sections 128.5 and 128.7 are not designed to punish parties who withdraw or correct their actions in a timely manner.  (*Li*, *supra*, 177 Cal.App.4th at p. 591; *Barnes*, *supra*, 74 Cal.App.4th at p. 133.)

Defendants rely primarily on *Palm Valley Homeowners Assn., Inc. v. Design MTC* (2000) 85 Cal.App.4th 553 (*Palm Valley*), but that case is inapposite.  There, counsel for the corporate defendant learned that the state had suspended its client for failing to file a required informational statement.  (*Id.* at p. 556.)  Counsel failed to report the suspension to the court or the other parties and continued to file and respond to pleadings and motions for five months.  (*Id.* at p. 557.)  The plaintiffs learned of the corporation's suspension through their own investigation.  (*Ibid*.)  The *Palm Valley* court held that the trial court did not abuse its discretion by imposing sanctions against the corporation's counsel under section 128.5.  (*Id.* at pp. 562-563.)  The evidence showed that counsel acted in bad faith by willfully concealing its client's suspension and disqualification from litigation activities.  (*Ibid.*)

*Palm Valley* has no application here.  There was no indication that the *Palm Valley* plaintiffs failed to comply with the safe harbor provision of section 128.5 or that they sought sanctions after counsel had cured the client's suspended status.  Indeed, it appears that counsel did not take any corrective action:  The *Palm Valley* court noted that curing

9

the suspension was "simple," yet counsel never advised its client to file the required informational statement. (*Palm Valley*, *supra*, 85 Cal.App.4th at p. 562.) By contrast, SIMNSA's counsel promptly took corrective action when defendants raised the certificate of qualification. And there is no evidence that SIMNSA's counsel knew of the issue for an extended period of time and willfully concealed it from the court and defendants.

For all of these reasons, the court did not abuse its discretion by denying the sanctions motion under sections 128.5 and 128.7.[3]

DISPOSITION

The order denying defendants' motion for attorney fees and costs as sanctions is affirmed. SIMNSA shall recover its costs of appeal. (Rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

MILLER
Acting P. J.
FIELDS
J.

---

[3]     Defendants argue that the court also erred by ruling that (1) they had waived SIMNSA's lack of capacity to maintain the lawsuit, and (2) Insurance Code section 1871.7, subdivision (g)(5), prohibits a prevailing defendant from recovering attorney fees when the state intervenes in the qui tam action. Those rulings were alternative grounds for denying defendants' motion. We need not reach those rulings, in light of our conclusion that the court properly denied the motion on other grounds.