Filed 10/12/22 Thee Aguila v. ERDM CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FIVE

| | |
|---|---|
| THEE AGUILA, INC, et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>ERDM INC., et al.,<br><br>Defendants and Respondents. | B299717 c/w B299725, B299757 and B299780<br><br>(Los Angeles County Super. Ct. Consolidated No. VC059422) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John A. Torribio, Judge. Affirmed.

Jessica Robin Barsotti for Plaintiffs and Appellants.

Century Law Group and Karen A. Larson for Defendants and Respondents Century Law Group, Karen A. Larson and Santiago Acuna.

_____

This consolidated appeal arises out of multiple lawsuits spanning over a decade between appellants Thee Aguila, Inc. and Henry Aguila (collectively landlord) and respondents ERDM, Inc., Santiago Acuna, Eva Meneses, and Edgar Fragoso (collectively tenants). The document at the heart of all of the litigation is a commercial lease. Following a three-week consolidated trial of five cases, the court issued a statement of decision and judgment that granted little to no relief to any of the parties. The court concluded the principal issues raised by landlord had been decided against him in a previous unlawful detainer action and that it was bound by those findings. The court also found neither party proved damages. Tenants did not appeal.

Landlord filed notices of appeal in all five cases but he challenges the trial court's findings or rulings in only two of them. He contends the trial court erred when it failed to find in his favor on those issues that had already been decided in the unlawful detainer action. He also claims the trial court erred in refusing to award damages for waste and for the improper filing of a lis pendens. Finally, landlord argues the statement of decision is deficient because it fails to address these issues. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Parties

Before our factual recitation and in the interests of clarity, we provide a brief discussion of the status of the parties in this appeal.

The litigation was primarily between landlord and tenants, but Century Law Group and Karen Larson (collectively lawyers), who were tenants' counsel below, were named as cross-

2

defendants in one of the lawsuits. As a result, they are also respondents in this appeal.

During the pendency of this appeal, tenants Meneses and Fragoso retained new appellate counsel, who failed to file a respondents' brief on their behalf. The absence of a respondent's brief does not mandate reversal. If "a respondent in a civil case files no brief at all, we still examine the record to see if it supports any claims of error made by the appellant." (*Griffin v. The Haunted Hotel, Inc.* (2015) 242 Cal.App.4th 490, 505.)

At trial, landlord's counsel provided evidence that ERDM's corporate status was suspended with the California Secretary of State. Neither side addresses this issue in their appellate briefs and the record is silent on whether ERDM's corporate status has been reinstated. Larson, who filed a respondent's brief on behalf of ERDM and others, confirmed at oral argument that ERDM remains a suspended corporation. A suspended corporation is disabled from participating in litigation. (Corp. Code, § 2205, subd. (c); Rev. & Tax. Code, § 23301; *Palm Valley Homeowners Assn., Inc. v. Design MTC* (2000) 85 Cal.App.4th 553, 560.)

Given these circumstances, we consider the respondents' brief to be filed only on behalf of Acuna, Century Law Group, and Larson and refer to them collectively as respondents.

The parties stipulated at trial that Henry Aguila is the alter ego of Thee Aguila, Inc. We accordingly refer to Aguila and his corporate alter ego together as landlord.

## 2. *The Lease*

Tenants Acuna and Fragoso, on the one hand, and landlord's father, on the other, entered into a 15-year lease for the period May 1, 2000, to April 30, 2015. The subject of the lease was commercial property in the City of Pico Rivera. The

property benefited from a conditional use permit (CUP) to operate as a restaurant and nightclub as well as a reciprocal easement with the adjacent landowner for use of the next-door parking lot. For many years, Acuna and Fragoso operated the El Rodeo nightclub on the property. El Rodeo held an on-site liquor license.

In 2006, landlord's father transferred the lease to landlord; at the same time, ERDM and Meneses were added as additional tenants. The terms of the lease otherwise remained the same. Relevant to the parties' litigation, the lease required tenants to comply with all applicable laws and regulations. Paragraph 35 of the lease provided tenants with a right of first refusal in the event landlord chose to sell or lease the property to a third party. Paragraph 11 of the lease contained an indemnity provision under which the parties agreed to maintain liability insurance that named each other as additional insureds and that contained cross-liability endorsements. Paragraph 11 also required tenants to indemnify and hold landlord harmless against any claims arising from tenants' use of the property or operation of their business.

### 3. *Law Enforcement Concerns*

On April 12, 2011, Captain James Thornton, the commanding officer for the Los Angeles County Sheriff's Department Pico Rivera Station, sent landlord and tenants a letter raising concerns about potential criminal activities at El Rodeo. Thornton described the activities as a "nuisance." The letter was prompted by a December 2010 shooting at El Rodeo that injured four security guards. El Rodeo security failed to cooperate fully with the deputies sent to investigate the shooting, even though the sheriff's department had received a high volume

4

of complaints requiring investigation. Two additional violent incidents occurred between El Rodeo security and patrons in 2011. Thornton identified multiple allegations of force by El Rodeo security. Thornton's letter required El Rodeo to "provide copies of licensed security guard certifications for each employee."

Thornton also raised concerns about underage drinking and sale of narcotics at the property. The sheriff's department had received approximately three times as many calls for law enforcement at El Rodeo than it had received for a comparable nightclub in the area.

The Department of Alcohol Beverage Control and the city sent similar letters regarding violations of the liquor license, CUP, and reciprocal parking easement. As a result, the city imposed mitigation measures on the CUP and the reciprocal parking easement. Tenants worked with Thornton and the city to address the concerns. The CUP was not revoked, and tenants continued to operate the nightclub until the lease expired in 2015.

## 4.     *The Lawsuits*

Between 2011 and 2015, landlord sued tenants six times, and tenants brought one lawsuit against landlord. Five of the lawsuits were transferred to Judge John Torribio, who conducted a consolidated bench trial in November 2017. Landlord filed notices of appeal in all five of the cases, four of which constitute this consolidated appeal. The remaining appeal was dismissed.

The multiplicity of actions notwithstanding, in his opening brief, landlord identifies only two lawsuits where error may have occurred — landlord's first civil action, LASC case No. VC059422 and tenants' civil action, LASC case No. BC482246. Accordingly, landlord has abandoned any claims of error as to the remaining

5

appeals. Nevertheless, we briefly describe six lawsuits between the parties because they are relevant to our analysis.[1]

**a.    The First Unlawful Detainer (LASC Case No. VC059752/COA Case No. B245565)**

On October 18, 2011, landlord filed an unlawful detainer action ("first UD") seeking possession of the property and forfeiture of the lease. Landlord alleged tenants had created a nuisance on the property and used the property for illegal purposes.

In a four-day bench trial, the parties presented testimony from 15 witnesses, including landlord Aguila, tenants Fragoso and Acuna, Captain Thornton, and current and former officials from the City of Pico Rivera. Judge Patrick T. Meyers issued a 64-page statement of decision, setting out the issues raised by the pleadings, describing the testimony and evidence in detail, and explaining the court's findings and conclusions.

Judge Meyers found landlord substantially relied on Thornton's correspondence and testimony to support his theory that tenants' activities constituted a nuisance. The court acknowledged that Thornton's letter and his testimony "set forth serious problems for ongoing law enforcement services," including 156 incidents or calls for service. Despite their concerns, however, Thornton, the Department of Alcohol Beverage Control,

---

[1]    For completeness, we note that the seventh lawsuit was a landlord's unlawful detainer action filed in 2013 (LASC case No. VC063679). The trial court found in tenants' favor and the Court of Appeal affirmed. (*Thee Aguila Inc. v. ERDM, Inc.* (May 19, 2016, B263005) [nonpub. opn.].) This case was not part of the consolidated bench trial.

and the city all sought to work with tenants rather than to shut them down.

After weighing the evidence, the court concluded landlord failed to prove tenants created or maintained a nuisance or used the premises for an unlawful purpose. Landlord appealed to this court from the resulting judgment in case No. B245565. The appeal was dismissed for failure to file an opening brief and the remittitur was issued on October 24, 2013. The first UD action is not part of the consolidated appeals but, as we discuss, is relevant to the issues before us.

b.      **Landlord's First Civil Action (LASC Case No. VC059422/COA Case No. B299725)**

On August 30, 2011, prior to the first UD, landlord filed a civil action against tenants asserting claims for public and private nuisance, breach of contract, and negligence ("landlord's first civil action"). Landlord's first civil action was stayed pending the first UD, the outcome of which resulted in the dismissal of the nuisance causes of action. That left only landlord's claims for breach of contract and negligence in the first civil action. On June 24, 2014, Judge Roger Ito sustained a demurrer to the negligence cause of action, finding it mirrored the claims decided in the first UD. The remaining breach of contract claim was decided by Judge Torribio in the consolidated bench trial.

c.      **Tenants' Action (LASC Case No. BC482246/COA Case No. B299717)**

On April 5, 2012, tenants filed suit against landlord ("tenants' action") alleging over half a dozen causes of action. Tenants' allegations boiled down to this: landlord breached the terms of the lease and interfered with tenants' use of the property

7

by attempting to sell it beginning in 2011, four years before the lease was to expire, without granting tenants their contractual right of first refusal. According to tenants, landlord led people in the community to believe landlord was selling the El Rodeo nightclub business, which landlord did not own, along with the real estate, which he did own. Landlord's conduct created confusion in the community as to who was the rightful owner of El Rodeo, leading music groups and vendors to be reluctant to work with tenants. Tenants claimed over $7 million in damages based on lower ticket and concession sales. Tenants' lawyers recorded a lis pendens on the property pursuant to Code of Civil Procedure section 405.20. The court denied landlord's motions to expunge the lis pendens.

Landlord cross-claimed against tenants and their lawyers for breach of contract, contractual indemnity, and slander of title based on the filing of the lis pendens. The trial court granted tenants' (as cross-defendants) anti-SLAPP motion in part, and a different panel of this court reversed, finding landlord had demonstrated the minimal merit necessary to proceed with the litigation. (*Thee Aguila, Inc. v. ERDM, Inc.*, *(May 9, 2016,* B257987) [nonpub. opn.].)

### d. Landlord's Second Civil Action (LASC Case No. BC521399/COA Case No. B299780)

On September 16, 2013, landlord filed a second civil action ("landlord's second civil action") against tenants and others for breach of contract, negligence, and indemnity based on the same allegations as in the first UD. Tenants filed a cross-complaint, alleging substantially identical claims to those in tenants' action. This action became part of the consolidated bench trial.

### e. The Action for Injunctive Relief (LASC Case No. VC063598/COA Case No. B299757)

On November 4, 2013, landlord filed suit for breach of contract and injunctive relief ("the action for injunctive relief"), seeking to prohibit tenants from tearing down or otherwise damaging "for sale" signs posted by landlord. Landlord also alleged he lost the opportunity to sell the property at a profit due to tenants' conduct and breaches of the lease. This matter also became part of the consolidated trial.

### f. Landlord's Third Civil Action (LASC Case No. VC064662/COA Case No. B299726)

Landlord filed a third civil complaint ("landlord's third civil action") against tenants for negligence, breach of contract, and express indemnity regarding tenants' conduct leading up to the expiration of the lease on April 30, 2015. Landlord alleged tenants had removed landlord-owned improvements, tenants prematurely stopped paying rent, insurance, utilities, and real property taxes, and tenants left the property in a condition that prevented landlord from leasing it to a new tenant. This also became part of the consolidated bench trial. Although landlord noticed an appeal from the adverse judgment, he did not file an opening brief, and this court dismissed that appeal.

### 5. *The Consolidated Trial*

In 2015, the following cases were consolidated in Judge Torribio's court: (1) landlord's first civil action; (2) tenants' civil action; (3) landlord's second civil action; (4) landlord's action for injunctive relief, and (5) landlord's third civil action. The trial court took judicial notice of the prior pleadings and rulings, including the September 2012 findings in the first UD by Judge

9

Meyers and the demurrer sustained by Judge Ito to the negligence claims in landlord's first civil action. The court found certain issues were res judicata based on the findings and rulings in the previous litigation. In particular, the court found Judge Meyers's findings to be res judicata as to the waste claims asserted by landlord and ruled that landlord was prohibited from presenting evidence of tenants' conduct prior to September 2012 to prove waste under a breach of contract theory.

After consideration of the parties' closing trial briefs, their separate res judicata briefs, and landlord's motions for reconsideration and new trial, the trial court for the most part entered judgment in favor of landlord on tenants' action and in favor of tenants on landlord's actions. In short, the trial court found for the defense in each of the complaints and cross-complaints, and it awarded no damages on the parties' principal claims.[2] The trial court expressly found landlord failed to prove his claimed $20 million in damages, or that there was any "real connection" between the damages sought and tenants' conduct.

We need not set out the entirety of the trial court's findings and conclusions, but instead focus on the two lawsuits as to which landlord has asserted error: landlord's first civil action and landlord's cross-complaint in tenants' civil action.

As to landlord's first civil action, the court took into account Judge Ito's ruling on demurrer and found the matter was limited to: breach of the indemnity agreement of the lease, breach of the parking easement, and failure to pay the yearly monitoring fee to the city. The court found insufficient evidence supported those

---

[2] The court did award landlord $112,646.06 for tenants' failure to pay the last two months' rent, real estate taxes, and utility bills. Respondents do not appeal from this award.

claims. Landlord does not pursue these claims on appeal and, instead, contends the trial court erred by failing to find that tenants breached the lease by committing waste.

As to the cross-complaint for slander of title in the tenants' action, the trial court assumed that a slander of title claim had been proven but found no damages. At trial, landlord had mainly argued he was damaged because the lis pendens prevented him from refinancing the property and he lost an opportunity to purchase a development in Texas. The court rejected that evidence, as we discuss below.

## 6. *The Consolidated Appeals*

Landlord filed notices of appeal from the judgment as to all five actions. As noted, landlord failed to file an opening brief in the appeal from landlord's third civil action, and that appeal was dismissed on December 23, 2019.

We consolidated the four remaining appeals under case No. B299725. As we have mentioned, respondents Meneses and Fragoso failed to file a respondent's brief after retaining new appellate counsel. On October 25, 2021, Century Law Group and Larson suggested that their brief could be deemed the brief of their former clients, Meneses and Fragoso, as well. We declined the invitation.

By the time a respondents' brief was due, Meneses and Fragoso were in default for failure to file a brief. By order dated March 21, 2022, we vacated the default to allow Meneses and Fragoso through their new counsel to file their respondents' brief by April 21, 2022. We struck "Appellant's Reply Brief" to allow landlord to file a new reply brief that addressed the issues expected to be raised by Meneses and Fragoso in their forthcoming brief. We advised landlord that he could refile his

original reply brief if Meneses and Fragoso failed to file a respondents' brief. Although Meneses and Fragoso did not file a respondents' brief, landlord failed to refile his original reply brief. The current state of the appellate record is that landlord's reply brief remains stricken.

## DISCUSSION

Landlord asserts there are three issues for this Court to decide on appeal. The first two are from landlord's first civil action: (1) Did the trial court err when it failed to find tenants breached the lease by causing waste of the property? and (2) Did the trial court err when it failed to find tenants' negligence caused loss of use of the property? The third issue comes from tenants' action: (3) Did the trial court err when it found landlord had suffered no damages on landlord's slander of title cross-complaint?

Landlord contends the trial court's statement of decision was deficient in failing to address these three issues either at all or in sufficient detail. We therefore begin with the standard of review for judgments based on a statement of decision.

### 1. Standard of Review

The trial court must issue a statement of decision, upon a party's request after a bench trial, "explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial." (Code Civ. Proc., § 632; Cal. Rules of Court, rule 3.1590(d)-(g).)[3] In reviewing a judgment based upon a statement of decision, we review questions of law de novo and findings of fact for substantial evidence. (*Cuiellette v. City of Los Angeles*

---

[3] All further undesignated rule references are to the California Rules of Court.

12

(2011) 194 Cal.App.4th 757, 765; *Niko v. Foreman* (2006)
144 Cal.App.4th 344, 364.)  Under substantial evidence, findings
of fact are liberally construed to support the judgment and we
consider the evidence in the light most favorable to the prevailing
party, drawing all reasonable inferences in support of the
findings.  (*Citizens Business Bank v. Gevorgian* (2013)
218 Cal.App.4th 602, 613.)

 The standard of review may be affected when a proper
request for a statement of decision has been made and the trial
court fails to issue a statement or issues an inadequate one.
"When a statement of decision does not resolve a controverted
issue, or if the statement is ambiguous and the record shows that
the omission or ambiguity was brought to the attention of the
trial court either prior to entry of judgment or in conjunction with
a motion under [Code of Civil Procedure] Section 657 or 663, it
shall not be inferred on appeal . . . that the trial court decided in
favor of the prevailing party as to those facts or on that issue."
(Code Civ. Proc., § 634; *Thompson v. Asimos* (2016) 6 Cal.App.5th
970, 981–983 (*Thompson*).)

 Rule 3.1590 sets out the procedure for the preparation of a
statement of decision, including a 10-day timeline to request the
statement and a 15-day objection period.  Strict adherence to
both steps of the process — the initial request for a statement of
decision and the subsequent objection period — "is necessary
before we will reverse the presumption of correctness generally
accorded trial court judgments on appeal." (*Thompson, supra,*
6 Cal.App.5th at p. 983.)

 A judgment based on an inadequate or no statement of
decision is subject to harmless error review.  (*F.P. v. Monier*
(2017) 3 Cal.5th 1099, 1102 (*Monier*).)  In *Monier,* the high court

indicated a trial court's failure to issue a statement of decision may be prejudicial if it prevents the appellate court from effectively performing a review of the material issues. (*Id.* at p. 1116.) It "is not error, or at least, . . . not a prejudicial error" where a trial court's failure to make a finding on an issue "could make no possible difference in the result." (*Id.* at p. 1114.)

## 2. *The Statement of Decision Was Legally Sufficient*

Landlord contends reversal is required because the statement of decision was ambiguous and lacked (1) the required findings as to each material issue raised by the pleadings, and (2) separate determinations of general, special, and punitive damages. We disagree.

As an initial matter, landlord has waived any challenge to the sufficiency of the statement of decision by failing to adhere to the 15-day time limit set out in rule 3.1590(g). (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134; *Thompson, supra,* 6 Cal.App.5th at p. 983; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) The trial court issued a proposed statement of decision on August 9, 2018, and landlord filed his objections to it 18 days later on August 27, 2018. The court properly overruled landlord's objections based, in part, on untimeliness.

Briefly addressing the adequacy of the statement of decision, we find no prejudicial deficiency as the statement allows for effective review of the material issues. (*Monier, supra,* 3 Cal.5th at p. 1114.) Although the statement could theoretically have contained more information, the statement set out the positions advanced by the parties and identified the crucial element — damages — that lacked sufficient proof. The failure to

14

discuss any other elements of the causes of action "could make no possible difference in the result." (*Ibid*.)

### 3. *Landlord Waived His Argument That Res Judicata Did Not Apply*

In his appeal from landlord's first civil action, landlord challenges the trial court's failure to find the waste and loss of use claims in his favor. According to landlord, undisputed evidence at trial showed tenants breached the lease by violating the terms of the CUP and causing its revocation. The value of the property plummeted as a result of landlord's inability to use it as a nightclub venue.

Respondents contend landlord is barred by res judicata from raising these issues on appeal because they were resolved in tenants' favor by Judge Meyers in the first UD action. Landlord failed to address res judicata in his opening brief.[4] And there is

---

[4] In the opening brief, landlord makes one reference to Judge Torribio's comment from the bench on whether Judge Ito's demurrer ruling in the tenants' civil action was "res adjudicate [*sic*] or law of the case." From this comment, landlord contends the trial court agreed Judge Ito's ruling did not preclude a breach of contract claim based on the same conduct constituting waste. Landlord mischaracterizes Judge Torribio's comment. The colloquy between Judge Torribio and the parties demonstrate an ongoing discussion regarding the preclusive effect of Judge Ito's demurrer ruling in the tenants' action and Judge Meyers's findings in the first UD. Judge Torribio ultimately concluded Judge Meyers's findings precluded relitigation of these issues in the consolidated trial.

15

no reply brief.[5]  Landlord has thus waived this issue.

**4.     *The Claims for Waste and Loss of Use Were Decided in the First UD***

Even if landlord has not waived this issue by failing to address it in appellate briefing, the claims for waste and loss of use were decided by Judge Meyers in tenants' favor in the first UD and are barred by res judicata.

Courts "have frequently used 'res judicata' as an umbrella term encompassing both claim preclusion and issue preclusion, which [have been] described as two separate 'aspects' of an overarching doctrine.  [Citations.]  Claim preclusion . . . acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties.  [Citation.]  Issue preclusion, . . . historically called collateral estoppel, describes the bar on relitigating issues that were argued and decided in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–824.)

Issue preclusion "prevents 'relitigation of previously decided issues,' rather than causes of action as a whole. [Citation.]  It applies only '(1) After final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.' " (*Samara v. Matar* (2018) 5 Cal.5th 322, 327.)  The " 'fact that different forms of relief are sought in the two lawsuits is irrelevant.' " (*Villacres v.*

---

[5]     As we have already mentioned, we struck landlord's original reply brief pending the filing of a respondents' brief by tenants Meneses and Fragoso.  Meneses and Fragoso did not file a brief, and landlord did not refile his reply brief.  It remains stricken.

*ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 576.) " ' "When an issue is properly raised, by the pleadings or otherwise, and submitted for determination, and is determined, the issue is actually litigated," ' . . . [w]hether an issue was ' "necessarily decided . . ." has been interpreted to mean that the issue was not " 'entirely unnecessary' " to the judgment in the prior proceeding.' " (*Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 400.)

"The res judicata effect of an unlawful detainer proceeding is narrow, but is not nonexistent.  Generally speaking, an unlawful detainer judgment has limited res judicata force because it typically follows a summary proceeding focused only on deciding a party's right to immediate possession of property.  [Citation.]  But when litigants to an unlawful detainer proceeding fully try other issues besides the right of possession, the unlawful detainer judgment is conclusive as to those other litigated issues." (*Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1371; accord *Vella v. Hudgins* (1977) 20 Cal.3d 251, 256–257 ["an unlawful detainer judgment can have preclusive effect in a subsequent proceeding if 'a fair opportunity to litigate is provided.' "].)  In *Gombiner,* at page 1373, for example, a prior unlawful detainer action established that the property was a duplex subject to rent control and that finding was binding in a subsequent civil action by the tenant for damages.

Judge Meyers's findings in the first UD are similarly conclusive in this case, and Judge Torribio correctly applied issue preclusion.  Prior to the consolidated trial, the court and the parties discussed the effect of Judge Meyers's findings in the first UD.  Landlord's counsel argued Judge Meyers's finding that tenants did not create a nuisance, as defined under the unlawful

17

detainer statute, did not necessarily preclude a suit for breach of contract for the same conduct. Judge Torribio disagreed and correctly applied the *Samara* factors: "So what we do here is we don't look at the remedy. We look at what was the issue at the time . . . was it litigated such that due process concerns are met and is the finding against the party who has reason to fight the finding. [¶] In this instance, the landlord has every incentive to establish nuisance and other breaches of the lease. [¶] In this instance, the trier of fact specifically ruled, as we quoted in Judge Meyers's ruling, there is no need to restate it, therefore, the principal of res adjudicata applies and any of those items raised in the unlawful detainer are barred." The trial court then specifically disallowed evidence of tenants' conduct before September 24, 2012 (the date of the first UD's statement of decision) to support a breach of contract claim.

On appeal, landlord continues to rely on tenants' pre-September 24, 2012 conduct to support his theory of waste. That was resolved in the first UD action. He has failed to identify any evidence of tenants' *post*-September 24, 2012 activities that would support a finding of waste or loss of use not previously adjudicated. Acuna testified at the consolidated trial that tenants worked with the sheriff's department and the city to address their concerns and to comply with any CUP conditions. Captain Thornton similarly testified to the cooperative effort with tenants at the first UD trial. The CUP was not revoked during the lease term and tenants used the property as a nightclub until May 1, 2015, when the lease expired. Landlord's appeal from his third civil action, which addressed tenants' conduct leading up to the expiration of the lease, was dismissed and those allegations are not at issue in this case.

18

Judge Torribio correctly determined that the preclusive effect of Judge Meyers's findings barred any pre-September 24, 2012 waste. That conclusion coupled with the landlord's failure to prove any post-September 24, 2012 waste defeated landlord's claims in the first civil action. Judge Torribio also agreed with Judge Ito that the only remaining breach of contract claims in landlord's first civil action related to the indemnity agreement of the lease, the parking easement, and the failure to pay the yearly monitoring fee to the city. Landlord does not argue in his brief that tenants breached the lease in those specific ways.

5.      ***Landlord Has Failed to Prove He Was Damaged by the Lis Pendens***

Landlord next argues the trial court erred when it ruled that landlord had failed to prove in his cross-complaint in tenants' action that he was damaged by tenants' slander of title. The record discloses otherwise.

a.      **Slander of Title**

Slander of title occurs when a person, without a privilege to do so, publishes a false statement that is reasonably understood to cast doubt upon the existence or extent of another's interest in land and causes the owner pecuniary loss. (*Hill v. Allan* (1968) 259 Cal.App.2d 470, 489.) The elements of the tort are (1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss. (*Truck Ins. Exchange v. Bennett* (1997) 53 Cal.App.4th 75, 84.)

"The main thrust of the cause of action is protection from injury to the salability of property [citations], which is ordinarily indicated by the loss of a particular sale, impaired marketability or depreciation in value." (*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1030

19

(*Sumner Hill*).) "[T]he expense of legal proceedings necessary to remove doubt cast by the disparagement and to clear title is a recognized form of pecuniary damage in such cases [citations]." (*Id.* at p. 1032.)

### b. Underlying Proceedings

After lawyers for tenants recorded a lis pendens on the property, landlord unsuccessfully sought to expunge it in the trial court. He also filed a cross-complaint alleging slander of title and other causes of action. Tenants moved to strike landlord's cross-claims under the SLAPP statute. The trial court granted the motion only as to the slander of title claim. The Court of Appeal reversed, holding that the allegations in tenants' second amended complaint were insufficient to support recording a lis pendens at the time it was filed. (*Thee Aguila, Inc. v. ERDM, Inc.*, *supra*, B257987).)

At the consolidated trial, landlord testified he was damaged by the lis pendens because it interfered with his attempt to refinance the property. He had intended to draw money from the property and invest it in a development in Texas. He lost that investment opportunity when he was unable to refinance. Landlord further testified he incurred approximately $50,000 in attorney fees at $350 per hour in his attempt to expunge the lis pendens and appeal from the anti-SLAPP proceedings.

Judge Torribio rejected this evidence. He found no evidence that any lender had committed to refinance the property. The court declined to credit the term sheet offered by landlord because the sheet contained a disclaimer that it was not a loan commitment. Judge Torribio further found the purchase contract for the development in Texas showed the escrow was to

20

close before the lis pendens was filed on July 30, 2013. Thus, there was no evidence the lis pendens impacted the purchase.

The proposed statement of decision, filed on August 9, 2018, was silent as to landlord's testimony regarding his efforts to expunge the lis pendens. On August 27, 2018, landlord objected to the court's failure to address the legal fees he incurred. The trial court overruled landlord's objections "on the merits and for the failure to comply with CCP sections 632 and 634 and CRC 3.1590(g)." Rule 3.1590(g) sets a 15-day time limit to file objections to the proposed statement of decision or judgment. Landlord's objection, filed 18 days after the proposed statement of decision, was untimely.

### c. Landlord Failed to Prove Damages

On appeal, landlord asserts the trial court erred when it found no damages even after the Court of Appeal held the lis pendens was improperly filed. (*Thee Aguila, Inc. v. ERDM, Inc.*, *supra*, B257987.) This misses the point. Whether or not the lis pendens was improperly filed, the trial court found that the filing did not adversely affect the Texas escrow, which was set to close before the lis pendens was filed. Nor did the lis pendens cause landlord to lose a loan commitment because there was no loan commitment to be lost. Substantial evidence supported the trial court's findings.

We reach a similar conclusion as to landlord's claim for lis pendens-related attorney fees. Fees incurred in order to clear title may be recoverable. (*Sumner Hill, supra,* 205 Cal.App.4th at p. 1032.) But it remains the plaintiff's burden to prove actual damages that are not " ' remote, contingent, or merely possible.' " (*Westside Center Associates v. Safeway Stores 23, Inc.* (1996)

21

42 Cal.App.4th 507, 531; *Copenbarger v. Morris Cerullo World Evangelism, Inc.* (2018) 29 Cal.App.5th 1, 11.)

Landlord's evidence about the legal fees he incurred came exclusively from this testimony:

"Q     By [landlord's counsel]:  In this matter, how much was your attorney's hourly rate in representing you in regards to . . . having the Lis Pendens Expunged [*sic*] . . .?

"A     Three hundred fifty an hour.

"Q     And approximately how much, to date, have you incurred in attorneys' fees in attempting to have the Lis Pendens expunged?

"A     Including appeal, about fifty thousand dollars before this trial."

Landlord did not provide supporting invoices from his attorney or any financial records showing payment.[6]

The implied finding that landlord failed to prove his entitlement to attorney fees as damages is supported by the record.  At various times in the statement of decision, the trial court refused to credit landlord's conclusory testimony when not supported by corroborating financial records.  For example, in Judge Torribio's introduction, he states: "Thee Aguila is suing for over $20,000,000 in damages.  Again, financial records are not offered.  It is almost a series of random events strung together with opinions with little or no support. . . .  With the exception of Design Studio, Mike Sahagun, the unpaid utility bills, the unpaid

---

[6]     To the extent landlord contends the statement of decision improperly failed to discuss the legal fees claim, landlord waived the issue by his untimely objection.  (*Thompson, supra*, 6 Cal.App.5th at p. 983.)

taxes and a few minor amounts, unpaid, there was a dearth of cancelled checks associated with appropriate bills that were offered into evidence.  See CACI 208."[7]

In light of the numerous lawsuits between the parties and the sheer amount of litigation that preceded the consolidated trial, the trial court could reasonably have concluded that landlord's testimony he incurred "about" $50,000 in attorney fees to expunge the lis pendens and appeal the anti-SLAPP ruling was not, by itself, sufficient to prove damages.  (See *Levy v. Toyota Motor Sales, U.S.A., Inc.* (1992) 4 Cal.App.4th 807, 816 [party seeking attorney fees has the "burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount' "].)

### *DISPOSITION*

The judgment is affirmed.  Respondents Acuna, Century Law Group, and Larson to recover their costs on appeal.

RUBIN, P. J.

WE CONCUR:

MOOR, J.                                  KIM, J.

---

[7]  The court may have misspoken in citing CACI No. 208, which deals with use of deposition testimony. Given the context of the citation, the trial court likely was referring to CACI No. 203, which allows the trier of fact to distrust weaker evidence where a party has the ability to provide stronger evidence.